**Ann B. FOSTER, Plaintiff,**

v.

**William E. SIMON, Secretary of the Treasury, Defendant.**

**No. C–C–77–083.**

United States District Court,
W. D. North Carolina,
Charlotte Division.

March 23, 1979.

Robert M. Tobias, Gen. Counsel, Hayward C. Reed and Thomas Angelo, Associate Gen. Counsel, National Treasury Employees Union, Washington, D. C., and William Harness, Associate Gen. Counsel, National Treasury Employees Union, Atlanta, Ga., for plaintiff.

Harold M. Edwards, U. S. Atty., Asheville, N. C., Wayne C. Alexander, Asst. U. S. Atty., Charlotte, N. C., and Harry G. Mason, Staff Asst. to the Regional Counsel, Internal Revenue Service, Atlanta, Ga., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

McMILLAN, District Judge.

This case was tried without a jury beginning January 22, 1979. Having heard the

evidence and argument from counsel, and having examined and considered the exhibits tendered by the parties, the court makes the following findings of fact and conclusions of law:

## FINDINGS OF FACT

1. This suit was commenced by plaintiff, Ann B. Foster, pursuant to Title VII of the Civil Rights Act of 1964, as amended by the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e *et seq.* (hereafter "the Act"), seeking relief for violations of § 717 of the Act, 42 U.S.C. § 2000e–16.

2. Plaintiff, Ann B. Foster, is a female tax auditor employed by the Greensboro District Office of the Internal Revenue Service (hereafter the "IRS"), in Charlotte, North Carolina. Plaintiff began her employment with the IRS in 1964. She became a GS–5 tax auditor in 1969, and is at present at GS–9 tax auditor.

3. Defendant, William E. Simon, is a former Secretary of the Department of Treasury. W. Michael Blumenthal is the current Secretary of the Department of Treasury, and is responsible for assuring compliance with all laws prohibiting discrimination in employment based on sex.

4. During April through July, 1975, the IRS posted an announcement for IRS employees to apply for several revenue agent positions in North Carolina. A requirement for being considered for one of the positions was a certification by plaintiff's immediate supervisor, Grady Ackerman, that she had the capability and interest to perform successfully the duties of revenue agent. Ackerman declined to certify plaintiff in July, 1975, stating, *inter alia*, that her performance as a tax auditor did not justify certification for the position of revenue agent. Plaintiff had been certified to compete for a position as a revenue agent in 1973 and 1974, but was not selected on either occasion.

5. Tax auditors (sometimes called tax technicians) conduct office audits of individual income tax returns. Tax auditors normally do not audit business returns. The highest non-supervisory grade level for tax auditors is GS–9.

6. Revenue agents conduct field audits of corporate and business tax returns. The journeyman grade for the revenue agent position is GS–11. Progression from one GS level to the next is normally achieved at one year intervals. In the Greensboro District, about two-thirds of the revenue agents are above GS–11.

7. The IRS had a policy of internal promotion whenever possible (Response to Request for Admission No. 15). The tax auditor position was an internal lead-in to revenue agent positions. In 1975, the tax auditors were predominantly female, but the revenue agents were 95% male (Plaintiff's Exhibits Nos. 7 and 8).

8. In 1975, plaintiff met all the requirements to compete for a position as revenue agent except the certification of her supervisor. Plaintiff is a graduate of the University of North Carolina at Charlotte, with degrees in Accounting and Psychology. Plaintiff's grade point average in her accounting courses was 2.83 and her overall grade point average was 3.12, both on a scale of 4.0. Plaintiff had also taken several internal courses in accounting offered by the IRS. Plaintiff's supervisor certified a male GS–9 tax auditor, Wayne Short, for the revenue agent position. In July, 1975, Mr. Short was selected to fill the opening in the Charlotte office as a GS–7 revenue agent. At present Mr. Short is a GS–11 (step 2) revenue agent.

9. After plaintiff was not certified to compete for the job of revenue agent, she filed a complaint with the Civil Service Commission, alleging discrimination based on her age and sex. The complaints examiner in this administrative proceeding found that plaintiff was discriminated against based on her sex when she was not certified by her supervisor.

10. Although plaintiff prevailed at the administrative level, she was not satisfied with the proposed remedy, which was reevaluation by a different certifying official and priority consideration for the next opening if she was then certified. After

plaintiff was again denied certification to compete for a job as revenue agent, she brought this action in the United States District Court for the District of Columbia. The case was transferred to this court on a motion by the defendant for change of venue.

11. Plaintiff was certified for the revenue agent job in 1977 by her new supervisor, Barbara Daniel, but at the time of trial was still a tax auditor.

12. *At the trial the parties stipulated that plaintiff was denied certification by her supervisor in July, 1975, because of discrimination based on her sex.* The defendant assumed the burden of showing that plaintiff would not have been selected as a revenue agent even if there had been no discrimination in the denial of certification. The defendant attempted to make this showing through the testimony of Mr. Joy Moore and Mr. Wayne Short.

13. Joy Moore was Chief of the Audit Division of the Greensboro District Office from 1970 to 1978. Moore was the official responsible for selecting persons to fill revenue agent positions in North Carolina. He selected Wayne Short to fill the opening in Charlotte in July, 1975. Mr. Moore testified that he did not select plaintiff in 1973 or 1974 when she was certified, and he would not have selected plaintiff in 1975 if she had been certified again. The reason given by Moore was that plaintiff did not have a B (3.00) average in her college accounting courses. Moore testified that a B average was a strictly enforced requirement for selection as a revenue agent.

14. This "requirement" of a B average, as testified to by Moore, was never published throughout the district or written in any form. The plaintiff and other applicants for jobs as revenue agents were not aware of this additional, unknown requirement. This "requirement" was raised for the first time at trial. The court was unable to find any mention of this requirement in the administrative proceedings.

15. Tax auditors Kimball and Handy, both women, testified that they had sought promotion to revenue agent for several years, but were never informed of a B average requirement. Revenue agent Barbara Daniel (who certified plaintiff in 1977) testified that she was never aware of the B average requirement, even though she participated in the recruiting effort for the IRS under the agency's affirmative action plan. In a November 17, 1975, memorandum from the Chief of Examination Branch 410-1, Samuel P. Newell to Group Manager Barbara Daniel, Newell states that plaintiff Foster and Fredda Fender (now Kimball) "have met the educational requirements to be reassigned to revenue agent positions" (Plaintiff's Exhibit 20). Neither plaintiff nor Kimball had a B average.

16. Defendant's contention that a B average was a requirement for the job of revenue agent, and that plaintiff would not have been selected because she did not have a B average, is a sham. It was an unwritten personal requirement imposed by the boss. It was not communicated to or known by potential applicants, and it was contrary to the policy and general standards of the agency.

17. The irony of this case is that defendant has proved that plaintiff would not have been selected as a revenue agent even if she had been certified by her supervisor in 1975. But the reasons plaintiff would not have been selected are that she is a woman and the defendant had groomed a man, Wayne Short, to fill the July, 1975, vacancy.

18. The qualifications of plaintiff and Wayne Short were similar. Both had degrees in accounting from the University of North Carolina at Charlotte. Short had been a tax auditor from June, 1973, until he became a revenue agent in July, 1975. Before joining the IRS, Short worked as an accountant for about a year and a half. Plaintiff had been a tax auditor since 1969.

19. Joy Moore testified that he would have selected Short over plaintiff because he had a better accounting background. This is not supported by the evidence. Discounting the B average requirement as pretextual, which I do, the plaintiff's qualifica-

tions were as good as or better than Short's since her experience as a tax auditor, according to IRS regulations, should have been substituted for general or professional experience in assessing her qualifications for revenue agent (Plaintiff's Exhibit 4).

20. Short attended IRS courses in corporate tax returns. Plaintiff Foster worked on corporate returns, but did not attend the IRS courses. Plaintiff's performance evaluations were favorable, and her supervisor, Barbara Daniel, testified that plaintiff has a good knowledge of tax law. Tax auditors Kimball and Handy testified that they frequently consulted plaintiff on complex tax problems.

21. The court finds, based on the objective measures in this record, that plaintiff was at least as qualified as Wayne Short, and should have been promoted to revenue agent in July, 1975. The contentions to the contrary advanced by defendant were a pretext and a sham.

22. The court finds that not only was there sex discrimination in defendant's failure to certify plaintiff in July, 1975, but the evidence amply demonstrates a sustained pattern and practice of discrimination against women in promotion in the Charlotte office and the Greensboro District.

## CONCLUSIONS OF LAW

1. The court has jurisdiction of this action under §§ 706(f)(1) and 706(f)(3) of the Act, 42 U.S.C. §§ 2000e–5(f)(1) and 2000e–5(f)(3). See 42 U.S.C. § 2000e–16(d). This action is properly before the court under §§ 706(f)(3) and 717(c) of the Act, 42 U.S.C. §§ 2000e–5(f)(3) and 2000e–16(c). All procedural requirements of §§ 706(f)(1) and 717(c) of the Act were met, 42 U.S.C. §§ 2000e–5(f)(1) and 2000e–16(c).

2. Defendant, William E. Simon, is a proper defendant within the meaning of § 717(c) of the Act, 42 U.S.C. § 2000e–16(c).

3. Plaintiff is entitled to a trial de novo in this court. Chandler v. Roudebush, 425 U.S. 840, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976), and the record of the administrative proceedings was admitted into evidence in this case. 425 U.S. at 863 n. 39, 96 S.Ct. 1949.

4. At trial the parties stipulated that plaintiff was denied certification by her supervisor in July, 1975, to compete for the job of revenue agent, because of discrimination based on her sex. This stipulation, along with the evidence presented by plaintiff, established her prima facie case of discrimination. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1972). Day v. Mathews, 174 U.S.App.D.C. 231, 530 F.2d 1083 (1976). The defendant assumed the burden of showing that plaintiff would not have been selected as revenue agent even if there had been no discrimination in the denial of certification to compete for the job. Day v. Mathews, supra.

5. Defendant attempted to meet his burden of proof through the testimony of Joy Moore and Wayne Short. Moore testified that he would have selected Short over plaintiff since he had a better background in accounting, and had better than a B average in his college accounting courses. Defendant contended that a B average was a requirement for the job of revenue agent, and that since plaintiff did not have a B average, she was not qualified and would not have been selected. Defendant did not articulate a legitimate, non-discriminatory reason why plaintiff would not have been selected as a revenue agent if she had been certified. Defendant's evidence falls far short of the burden it assumed at trial, to show by clear and convincing evidence that plaintiff would not have been selected absent discrimination. Day v. Mathews, supra. Defendant's evidence even falls short of shifting the burden of proof back to plaintiff under the apparently less stringent burden of proof in McDonnell Douglas Corp. v. Green, supra, since defendant did not articulate a legitimate reason why plaintiff would not have gotten the job. See Board of Trustees of Keene State College v. Sweeney, —— U.S. ——, 99 S.Ct. 295, 58 L.Ed.2d 216 (1978), and cases cited therein.

6. The reason given by Moore was that plaintiff did not have a B (3.00) average in her college accounting courses. Moore testified that a B average was a strictly enforced requirement for selection as a revenue agent. This "requirement" of a B average, as testified to by Moore, was never published throughout the district or written in any form. The plaintiff and other applicants for jobs as revenue agents were not aware of this additional, unknown requirement. This "requirement" was raised for the first time at trial, and the court was unable to find any mention of this requirement in the administrative proceedings. Defendant's contention that a B average was a requirement for the job of revenue agent, and that plaintiff would not have been selected because she did not have a B average, is a sham. It was an unwritten personal requirement imposed by the boss. It was not communicated to or known by potential applicants, and it was contrary to the policy and general standards of the agency. The evidence clearly shows the reasons articulated by defendant were a pretext to discrimination based on sex. *McDonnell Douglas Corp. v. Green*, 411 U.S. at 804, 93 S.Ct. 1817.

7. The court concludes, as a matter of law, that plaintiff Foster has been discriminated against because of her sex in violation of § 717 of the Act, 42 U.S.C. § 2000e–16, and is entitled to be made whole under § 706(g) of the Act, 42 U.S.C. § 2000e–5(g). *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). Plaintiff is entitled to retroactive promotion to a GS–9 revenue agent, effective July 31, 1975, with back pay based on what she would have earned had she been promoted to revenue agent in July, 1975, to the date of her appointment to a GS–13 revenue agent, less what she actually earned. In addition, plaintiff is entitled to attend all courses, seminars, and training schools, and receive all other benefits she would have received had she been promoted in July, 1975. 42 U.S.C. § 2000e–5(g).

8. The evidence amply demonstrates a sustained pattern and practice of discrimination against women in promotion in the Charlotte office and the Greensboro District of the IRS. *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). Therefore the IRS will be permanently enjoined under § 706(g) of the Act from further discrimination against women in the Charlotte office and the Greensboro District.

9. A judgment will be entered with these findings and conclusions.

10. Plaintiff is entitled to costs and reasonable attorney's fees.

## JUDGMENT

In accordance with the findings of fact and conclusions of law entered herewith, IT IS ORDERED, ADJUDGED AND DECREED:

1. That plaintiff be immediately converted to the position of Internal Revenue Agent, GS–13, in the Charlotte office of the Greensboro District, and be retroactively reassigned to the position of Internal Revenue Agent GS–9 effective July 31, 1975.

2. That plaintiff be granted back pay in the sum equal to the difference between what she would have earned had she been converted to a GS–9 Revenue Agent effective July 31, 1975, and what she did earn between July 31, 1975, and the date of her appointment to GS–13 as the result of this judgment.

3. That plaintiff be scheduled by defendant to attend all schools, seminars, and training classes which are now available for Revenue Agents which she would have attended had she been re-assigned as Revenue Agent in 1975.

4. That plaintiff be made whole by receiving payment or credit for any benefits, allowances, or differentials she would have earned had she been re-assigned as a GS–9 Internal Revenue Agent in July, 1975.

5. That defendant, his agents, successors, employees, attorneys and those acting in concert with them and at their direction, are hereby permanently enjoined from con-

tinuing or maintaining any policy, practice, custom, and usage of denying, abridging, withholding, conditioning, limiting, or otherwise interfering with the rights of plaintiff and other female employees to equal employment opportunities on the basis of sex.

6. That defendant, his agents, successors, employees, attorneys, and those acting in concert with them and at their direction, are hereby permanently enjoined from any acts of retaliation or recrimination against plaintiff or any of the witnesses in this case, particularly Barbara Daniel, who on this record, was the victim of pressure and retaliation even before the trial ever began.

7. That paragraphs 1, 2, 3 and 4 of this judgment are to be complied with immediately by defendant, and that defendant is to so certify to the court within thirty (30) days of the filing of this judgment.

8. That plaintiff is allowed the costs of this action, including reasonable attorney's fees in the amount of $10,560.00, plus litigation expenses of $1,282.56.

## ORDER ALLOWING ATTORNEYS' FEES

In accordance with the findings of fact and conclusions of law entered herewith, plaintiff, as the prevailing party, is entitled to an award covering reasonable counsel fees, costs and expenses to date. 42 U.S.C. § 2000e–5(k). *Van Hoomissen v. Xerox*, 503 F.2d 1131 (9th Cir. 1974); *Patterson v. American Tobacco Co., et al.*, 9 EPD ¶ 10,-039 (E.D.Va.1974). The purpose of counsel fees is to make sure that Title VII works. *Culpepper v. Reynolds Metals Co.*, 421 F.2d 888, 891, n. 3 (5th Cir. 1970).

In arriving at this fee the court has considered the factors discussed and considered in numerous cases, including *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), and *Swann v. Charlotte-Mecklenburg Board of Education*, 66 F.R.D. 483 (W.D.N.C.1975). Those factors include the following:

1. *The time and labor required.*—Plaintiff's counsel has filed an affidavit which shows a total of 190.3 hours of attorneys' time spent on this case. Plaintiff was represented by counsel from the National Treasury Employees Union. The time shown in the affidavit by Mr. William Harness, who tried the case *de novo* before this court, covers his time and the time spent by other lawyers employed by the Union.

The labor required for prosecution of this action included preparation for and attendance at a full administrative hearing. The administrative proceeding involved substantial preparation of witnesses and briefing before and after the hearing. Although plaintiff prevailed at the administrative level, she was not satisfied with the scope of the relief obtained, and sought trial *de novo* in the United States District Court. The proceedings in federal court involved briefing two serious motions and a hearing and the trial in this court. After the trial plaintiff's counsel submitted proposed findings of fact and conclusions of law as requested by the court, and has spent time, not shown in the affidavit, responding to post trial objections by the defendant. The work detailed in plaintiff's counsel's affidavit appears to be work requiring the direct involvement of counsel.

2. *The novelty and difficulty of the case.*—This case presented straightforward issues of sex discrimination in defendant's policies and practices. Neither the parties nor the court were required to consider novel issues of law.

3. *The skills requisite to perform the legal services properly.*—Plaintiff's counsel's work throughout this litigation was of high caliber, and his written work was helpful at all stages of the case.

4. *The preclusion of other work.*—Representation of plaintiff in this case did not, in all likelihood, result in any significant preclusion of other work.

5. *The customary fee.*—In recent cases this court has awarded fees to prevailing plaintiffs in Title VII cases at a rate of $60.00 per hour or more. Plaintiff's counsel has requested $60.00 per hour for Mr. Harness, and $50.00 per hour for Mr. Reed, who handled the case at the early stages.

6. *Whether the fee is fixed or contingent.*—Compensation of plaintiffs' attorneys is dependent upon whether plaintiffs win. Not all such suits are successful. Under § 706(k) of Title VII of the Civil Rights Act, 42 U.S.C.A. § 2000e–5(k), courts are expected to award adequate fees to encourage individuals injured by discrimination to seek judicial relief. *Johnson v. Georgia Highway Express, supra,* at 716.

7. *The results obtained.*—Plaintiff obtained retroactive promotion with back pay, and declaratory and injunctive relief with respect to defendant's discriminatory policies and practices.

■ Upon consideration of these factors and the entire record, the court finds that a reasonable fee for plaintiff's attorneys is $10,560.00, plus litigation expenses of $1,282.56. *See Firebird Society v. Members of the Board of Fire Commissioners,* 556 F.2d 642 (2nd Cir. 1977); *Cf., Wheeler v. Durham City Board of Education,* 585 F.2d 618 (4th Cir. 1978). A judgment will be entered accordingly.