**C. H. CUNNINGHAM and Edwin C. Watkins**

v.

**CENTRAL BEVERAGE, INC.**

**Civ. A. No. 3–77–0931–G.**

United States District Court, N. D. Texas, Dallas Division.

Feb. 4, 1980.

---

**3.** When the courts speak of "reasonable inquiry" it is obvious they are not referring to inquiry of the alleged fraud feasor.

**4.** Another provision, comparable to Section 516.170, applies to real actions included within the general limitations statute. Section 516.-030 RSMo.

Kenneth H. Molberg, Law Offices of James C. Barber, Dallas, Tex., for plaintiffs.

Durwood D. Crawford, John F. McCarthy, Jr., Seay, Gwinn, Crawford, Mebus & Blakeney, Dallas, Tex., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

PATRICK E. HIGGINBOTHAM, District Judge.

Plaintiffs C. H. Cunningham and Edwin C. Watkins allege that they were subjected to employment practices committed by defendant, Central Beverage, Inc., in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621, *et seq.* More specifically, Cunningham contends that on or about March 15, 1977, his employment as route supervisor with defendant was terminated by George Wood, the defendant's General Manager, on account of his age (54 at time of termination). Watkins contends that around the same date, he was demoted from the position of route supervisor by Wood on account of his age (64 at time of demotion). Central Beverage denies having discriminated against Cunningham and Watkins.[1]

In an ADEA case, the burden of persuasion, often called the risk of nonpersuasion, always remains on the plaintiff. *Marshall v. Westinghouse Electric Corp.*, 576 F.2d 588, 590 (5th Cir. 1978). Here, the court has not been affirmatively persuaded that Central Beverage has violated ADEA.[2]

---

1. The court finds that the general assertions of plaintiffs that they were discriminated against on account of age in the terms, conditions, and privileges of employment have no merit and are thus not discussed further in this order.

2. 29 U.S.C. § 623(a) provides in part:

(a) It shall be unlawful for an employer—(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age; (2) to limit, segregate, or classify his employees in any way which would deprive or tend

in that the plaintiffs have not shown that age was a "determining factor" in the accused discharge or demotion.[3]

█ Based on recent case law, to recover under ADEA, plaintiffs must prove not merely that age was one factor which contributed to the employment decision challenged, but that it was a "determining factor." In dicta, the Fifth Circuit, in *Marshall v. Airpax Electronics, Inc.*, 595 F.2d 1043 (5th Cir. 1979), decided as much.

*Airpax* was limited to age discrimination which was alleged to have occurred on the day a Ms. Neshick was interviewed for an executive secretary position at Airpax. Plaintiff Secretary of Labor conceded that there was no executive secretary vacancy at the time Airpax interviewed Ms. Neshick. The court noted that it could not order relief for Ms. Neshick if no vacancy existed at that time. *Id.* at 1044. In the course of describing how Ms. Neshick had not established a *prima facie* case of age discrimination, the court noted:

> The Government never attempted to prove that Ms. Neshick was qualified for the position she was seeking. Thus the Government could not show that age was a determining factor in Ms. Neshick's failure to get the job. *See Mastie v. Great Lakes Steel Corp.*, 424 F.Supp. 1299, 1307–1308, 1321–1322 (E.D.Mich. 1976).

*Id.*

In *Mastie, supra,* the court found on the basis of Labor Department regulations, legislative history, and case law, that the proper interpretation of ADEA is that age must be "a determining" factor in an employee's personnel policies or practices for a violation. "[T]here could be more than one factor in the decision to discharge him and that he was nevertheless entitled to recover if one such factor was his age *and* if in fact it made a difference in determining whether he was to be retained or discharged." *Lau-*

gesen v. Anaconda Co., 510 F.2d 307, 317 (6th Cir. 1975), *quoted in Mastie v. Great Lakes Steel Corp., supra*, at 1321. This standard appears to be the prevailing one. *See* Note, *The Cost of Growing Old: Business Necessity and the Age Discrimination in Employment Act*, 88 Yale L.J. 565, 568 (1979).

In the case at hand, the employer did consider age in the two contested personnel decisions. Indeed, Wood, the general manager, told certain employees that age was a factor in the decision to terminate and the decision to demote. But age was not a determining factor in the case of Cunningham in that Cunningham here would have been terminated even if age had not been considered, and thus the employer did not violate ADEA as to him. However, age was a determining factor in the demotion of Watkins.

█ In 1976 and 1977, Central Beverage was suffering serious competitive reverses. Wood was hired as a general manager as a result of competitive pressure. Large losses caused Wood to cast a hard look at each employee, even Cunningham and Watkins who had served Central Beverage faithfully for more than two decades. At least some of the drivers Cunningham was supervising and recommending for promotion had, in fact, been permitting large quantities of old beer to accumulate on their routes. It is sufficient to note that Cunningham failed to accommodate his sales methods to those of Wood, his new boss.

█ It is not necessary to catalogue all of Wood's quarrels with Cunningham and Watkins. But age was a determining factor in the demotion: there is convincing evidence that Watkins was a natural leader, and would not have been demoted in his job as route supervisor but for his age. His new boss just wanted a younger man.

---

to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age.

**3.** Plaintiffs have thus not met what courts have referred to as the "ultimate burden" that plaintiffs must meet in ADEA cases. *See Cleverly v. Western Electric Co.*, 594 F.2d 638, 641 (8th Cir. 1979).

Requiring proof that age was not merely one factor but a determining factor in the challenged personnel decision at first glance seems harsh. But the plaintiffs in Title VII, accorded more favorable substantive and procedural benefits for reasons to be discussed, fare little better. In Title VII cases, if sex, race, color, religion, or national origin is a factor in the challenged personnel decision, a violation has occurred; but only if any of these was a determining factor would a plaintiff be able to obtain reinstatement, promotion, or backpay. *See, e. g., Gitlin v. Federal Paper Board Co., Inc.,* 12 EPD ¶ 11,025, at 4789 (D.Conn. 1975); *Peele v. Califano,* 447 F.Supp. 160, 166 (D.D.C.1978); *Day v. Mathews,* 174 U.S. App.D.C. 231, 233, 530 F.2d 1083, 1085 (D.C. Cir.1976); *Rogers v. Equal Employment Opportunity Commission,* 179 U.S.App.D.C. 270, 271, 551 F.2d 456, 457 (1977); *King v. Laborers International Union of North America, Union Local No. 818,* 443 F.2d 273, 278–79 (6th Cir. 1971).

The force of the intrinsic appeal of the vision of a beneficent, egalitarian society brought about by nondiscrimination laws creates a momentum which must be both directed and controlled. *CF.,* Schuck, *The Graying of Civil Rights Law: The Age Discrimination Act of 1975,* 89 Yale L.J. 27, 27 (1979). The ideal portfolio of constitutionally-mandated legislative action, court interpretation, and administrative procedures is not uniform but is tailored to the discriminatory evil at issue. Different procedural and substantive structures for different proscribed evils does not reflect a hierarchy of protected groups or evils but recognizes the special needs of protected groups and the differing sources and impacts of proscribed evils, the necessary predicate to creating a system of equal opportunity.

The discrimination suffered by the aged is different from that suffered by females or blacks. In *Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307, 312, 96 S.Ct. 2562, 2567, 49 L.Ed.2d 520 (1976), the Supreme Court stated that the aged "unlike, say, those who have been discriminated against on the basis of race or national origin, have not experienced a 'history of purposeful unequal treatment' or been subjected to unique disabilities on the basis of stereotyped characteristics not truly indicative of their abilities." "[O]ld age does not define a 'discrete and insular' group . . . in need of 'extraordinary protection from the majoritarian political process.' Instead, it marks a stage that each of us will reach if we live out our normal span." *Id.* at 313–314, 96 S.Ct. at 2567. Indeed, age discrimination involves many considerations different from other prohibited forms of discrimination:

> . . . the advantages of age as a classificatory criterion; the demonstrated ability of the elderly to protect their interests in the political process; the reality of a high correlation between people's ages and certain of their needs and abilities; the widespread programmatic use of age as a proxy for other characteristics that should not or could not be measured directly; the ubiquitous and inescapable use of nonage factors having differential age-specific impacts; and the relatively secure political safeguards against arbitrary uses of age and factors other than age.

Schuck, *supra,* 64–65.

It is not surprising then that the standards for determining the validity of age classification are more permissive than those based upon race. *Id.* at 37 n.43. And "[b]ecause the aging process causes employees constantly to exit the labor market while younger ones enter, simply the replacement of an older employee by a younger worker does not raise the same inference of improper motive that attends replacement of a black by a white person in Title VII cases." *Marshall v. Goodyear Tire & Rubber Co.,* 554 F.2d 730, 736 (5th Cir. 1977). For example, the disparate impact analysis in race cases cannot be extended easily to age cases given that the facially neutral factors challenged almost certainly will generate different impacts for different age groups because each point in the life cycle tends to be associated with different distributions. "Unless virtually all facially neutral classifications are to become

suspect, the use of nonage factors ought to enjoy a strong presumption of reasonableness notwithstanding the age-specific differential impacts that inevitably ensue." Schuck, *supra*, at 35–37.

For the foregoing reasons, defendant Central Beverage violated ADEA as to Watkins but not as to Cunningham.