**Robert J. TONEY, Appellant**

v.

**John R. BLOCK, Secretary of Agriculture, U.S. Department of Agriculture.**

No. 81–2235.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 1, 1982.

Decided April 29, 1983.

Paul A. Kiefer, Washington, D.C., for appellant.

Diane M. Sullivan, Asst. U.S. Atty., with whom Stanley S. Harris, U.S. Atty., Royce C. Lamberth and R. Craig Lawrence, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee. Kenneth M. Raisler, Asst. U.S. Atty., Washington, D.C., also entered an appearance for appellee.

Before TAMM and SCALIA, Circuit Judges, and OLIVER GASCH,* Senior District Judge for the District of Columbia.

* Sitting by designation pursuant to 28 U.S.C. § 294(c) (1976).

Opinion for the court filed by Circuit Judge SCALIA.

Opinion filed by Circuit Judge TAMM, concurring in the result.

SCALIA, Circuit Judge:

This case is before us for the second time. A full description of the underlying facts is set forth in our first opinion, *Toney v. Bergland,* 645 F.2d 1063 (D.C.Cir.1981) (per curiam), and we repeat only those elements necessary to explain our disposition of the present appeal.

Appellant Toney, an employee of the Office of Personnel ("OP") of the United States Department of Agriculture, applied for a vacancy in the Department at the next highest grade level (GS–14). When the job was ultimately awarded to a white employee, Toney, a black man, filed a formal complaint with the Department, alleging racial discrimination in violation of the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e–16(a) (Supp. IV 1980). After an investigation and a hearing, an EEO Complaints Examiner found that while the *initial* ranking criteria for the selection were "inherently unreasonable, and the resulting selections tainted thereby, ... the basis for these actions was not the race of the applicants as white applicants were equally disadvantaged in competing for the position." *In re Toney* at 3 (Jan. 28, 1979), Jt.App. at 8. She further found that the *ultimate* ranking process (employed after appellant protested the initial selection) inevitably placed appellant at a disadvantage vis-a-vis the individual who had been chosen the first time around; but that this disadvantage also applied to white applicants as well, and constituted "no disparate treatment." *Id.* On the basis, however, of statistical evidence of hirings and promotions within OP; of evidence that Mr. Toney's supervisor did not personally observe his work (and thus responded "Don't Know" in many categories of ranking evaluation) whereas the successful white applicant suffered no such disability; and of the fact that the successful white applicant and the two next best qualified white applicants

had been accorded work assignments which gave them a better background than Mr. Toney; the Examiner found "that the presumption of institutional or systemic discrimination within OP has been created and that the evidence of record is not such as to overcome that presumption." *Id.* at 4, Jt. App. at 9. She recommended "a decision finding discrimination ·but no reprisal on the issues considered." *Id.* With regard to corrective ·action, she recommended as follows:

> In view of the fact that the record reflects that there were available applicants who were as well qualified as the complainant, I do not find that but for the discrimination he would have been selected for the position at issue. Accordingly, I recommend that he be given priority consideration for the next GS–14 level vacancy within the agency for which he qualifies and for which he wishes to be considered, and that he be reassigned or detailed as soon as possible to give him the broader personnel experience which will enhance his chances for promotion.

*Id.* at 4–5, Jt.App. at 9–10. As provided in the applicable regulations, the Examiner's recommended decision became a "final decision binding on the agency" when the Department failed to issue a final decision of its own within 30 days after submission of the recommended decision. *See* 5 C.F.R. § 713.220(d) (1977) (current version at 29 C.F.R. § 1613.220(d) (1982)).

Appellant subsequently filed a Title VII suit in the District Court, pursuant to 42 U.S.C. § 2000e–16(c) (1976), seeking back pay and retroactive promotion. On cross-motions for summary judgment, the District Court entered judgment for the Department, on the ground that the undisputed factual record established by clear and convincing evidence that Toney would not have been selected for the position in question even absent discrimination. *Toney v. Bergland,* Civ.Action No. 78–1007 (D.D.C. Sept. 14, 1979). This court reversed and remanded, finding that "[t]he administrative record ... does not foreclose any dispute" regarding that point. *Toney v. Bergland, supra,* 645 F.2d at 1067. On remand,

the District Court found, after two days of testimony, that "race was not a factor in the [promotion] decision"; that although a prima facie case of discrimination had been presented, the defendant had "clearly articulated legitimate nondiscriminatory reasons for not selecting Toney"; and that "Toney ha[d] not proven discriminatory intent or pretext" as required by the three-stage test enunciated in *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). It further found that, "[e]ven assuming that there was discrimination, . . . the defendant has demonstrated by clear and convincing evidence that Toney would not have been selected." *Toney v. Bergland,* Civ.Action No. 78–1007 at 6–7 (D.D.C. Oct. 9, 1981).

A preliminary issue concerns the binding effect in this proceeding of the finding of discrimination made by the EEO Complaints Examiner. That issue was not presented in the earlier appeal, since the Department had stipulated the point for purposes of the summary judgment. *See* 645 F.2d at 1065. Unquestionably, the Examiner's findings are not binding upon the appellant, since it is clear that he is entitled to a trial *de novo. See Chandler v. Roudebush,* 425 U.S. 840, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976). Appellant asserts, however, that the agency stands in a different position, because of the regulation making the Examiner's decision a "final decision binding on the agency." We find it unnecessary to resolve this question, since even if the Examiner's discrimination finding were conclusive, it would establish no more than a prima facie case, which the District Court specifically found to have been adequately met by the defendant's evidence.

Appellant asserts that the discrimination finding triggered application of the principle enunciated by this court in *Day v. Mathews,* 530 F.2d 1083 (D.C.Cir.1976) (per curiam), whereby, once discrimination is established, the burden shifts to the employer to show, by "clear and convincing evidence," that the discrimination was not the effective cause of the adverse employment decision. The District Court rejected this argument, and rightly so.

The Examiner's opinion did not find discrimination to have been a factor in the promotion decision at issue here. To the contrary, it found that the basis for any defects in that decision-making process "was not race," and that "there was no disparate treatment." The portion of the opinion recommending "a decision finding discrimination" referred to the "institutional or systemic discrimination" identified in the immediately preceding sentence—or at most (though it would have extremely fragile support) to a finding of discrimination against Toney himself with regard to the manner in which his work in OP had been supervised and with regard to the work assignments he had been given, rather than with regard to the evaluation of his qualifications for the vacant position.

Appellant's reliance upon *Day v. Mathews* is therefore misplaced. That case involved a situation in which the plaintiff had established that unlawful discrimination had been applied against him *in the particular employment decision for which retroactive relief was sought.* We held that in such circumstances it is unreasonable and destructive of the purposes of Title VII to require the plaintiff to establish in addition the difficult hypothetical proposition that, had there been no discrimination, the employment decision would have been made in his favor. We chose instead to place the burden upon the employer to show, by "clear and convincing evidence," that the unlawful factor was *not* the determinative one. It is fundamentally different, however, to assert that where the existence of unlawful discrimination has been established only within the employment unit at large (or perhaps against the employee in regard to some other aspect of his employment) and has *not* been specifically attributed to the employment decision of which the plaintiff complains, we will *both* find discrimination to have been a *factor and* find that factor to have been determinative unless the employer makes the extraordinary and difficult *Day v. Mathews* showing. The difference between *Day* and the present case is the difference between mak-

ing the employer demonstrate (by clear and convincing evidence) that a cause established through normal processes of proof was not an efficacious one, and making him demonstrate that the cause itself did not exist.

■ The error of appellant's position is evident from the Supreme Court's most recent pronouncement in this field. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), described the shifting of the burden of production that occurs in the typical Title VII proceeding:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." ... Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

450 U.S. at 252–53, 101 S.Ct. at 1093 (citations omitted). One paragraph later, in the course of discussing the nature of the step-one prima facie case, the Court said:

> The prima facie case serves an important function in the litigation: it eliminates the most common nondiscriminatory reasons for the plaintiff's rejection. See *Teamsters v. United States,* 431 U.S. 324, 358, and n. 44 [97 S.Ct. 1843, 1866, n. 44, 52 L.Ed.2d 396] (1977).

*Id.* at 253–54, 101 S.Ct. at 1094. The citation of *Teamsters*—as a case exemplifying the function of the prima facie case to which *Burdine* refers—is most significant for present purposes. For in *Teamsters* the prima facie case of discrimination in the individual employment decision was established, just as it was established here, by demonstration of discrimination at large within the employment unit. The Court

there rejected the contention that "the *only* means of establishing a prima facie case of individual discrimination" was the means employed in *McDonnell Douglas Corp. v. Green, supra,* which focused upon the individual employment decision. *See Teamsters, supra,* 431 U.S. at 358, 97 S.Ct. at 1866. To the contrary, the Court said, quoting from *Franks v. Bowman Transportation Co.,* 424 U.S. 747, 772, 96 S.Ct. 1251, 1268, 47 L.Ed.2d 444 (1976):

> By "demonstrating the existence of a discriminatory hiring pattern and practice" the plaintiffs had made out a prima facie case of discrimination against the individual class members; the burden therefore shifted to the employer "to prove that individuals who reapply were not in fact victims of previous hiring discrimination."

431 U.S. at 359, 97 S.Ct. at 1866–1867. It is clear from *Burdine's* citation of *Teamsters* (if indeed it was not already clear from the *Teamsters* opinion itself) that demonstration of discrimination at large constitutes, for purposes of individual relief, no more than the prima facie case that shifts the burden to the defendant to produce some nondiscriminatory justification—which, when done (as it was done here), shifts the burden back to the plaintiff "to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Burdine, supra,* 450 U.S. at 253, 101 S.Ct. at 1093. The same analysis would apply to demonstrated discrimination against the individual plaintiff in a respect separate and apart from the employment decision that is the subject of the suit. The existence of generalized discrimination within the employment unit, or of discrimination against the plaintiff in other employment contexts, may of course be taken into account (just as any other elements establishing a prima facie case may be taken into account) in the factfinder's determination of whether the proof of pretext has adequately been made. But it is the plaintiff's task to prove it, rather

than the defendant's to prove, by "clear and convincing evidence," the opposite.**

Our opinions in *Trout v. Lehman,* 702 F.2d 1094 (D.C.Cir.1983), and *McKenzie v. Sawyer,* 684 F.2d 62 (D.C.Cir.1982), apply the *Day v. Mathews* test to the so-called remedial stage of Title VII class actions. In light of the Court's opinion in *Burdine,* however, we decline to extend these holdings to the context of an individual Title VII suit.

█ We have reviewed the record, therefore, to determine whether there is the requisite support for the District Court's determination that "race was not a factor in the [promotion] decision," and that (the test of *Day v. Mathews* therefore not being applicable) the defendant has met the plaintiff's prima facie case with "clearly articulated legitimate nondiscriminatory reasons for not selecting Toney" and "Toney has not proven discriminatory intent or pretext." *Toney v. Bergland, supra,* Civ.Action No. 78–1007 at 7 (D.D.C. Oct. 9, 1981). Although the District Court denominated the last two of these "Conclusions of Law," they are all findings of fact which we cannot set aside "unless clearly erroneous." Fed.R.Civ.P. 52(a). That standard cannot be met here. It suffices to note that all officials involved in the promotion decision who testified (one panel member, Mr. Krist, was not called) denied racial motivation, *see* Tr. at 13–14, 17 (Testimony of Sayko), 50 (Logan), 82 (Riley), 101 (Sullivan), 119 (Pranger); and that all witnesses who had reviewed the candidates' qualifications and rated them not only agreed that the experience and background of the individual selected for the position were superior to those of Toney, *see* Tr. at 51 (Logan), 75 (Riley), 97 (Sullivan), 118 (Pranger); but also testified that at least two individuals

had more suitable experience for the job than Toney, *see* Tr. at 64 (Logan), 77 (Riley), 98 (Sullivan), 118 (Pranger). While all this testimony could, of course, be disbelieved, that judgment is for the trier of fact, and we are enjoined to give "due regard ... to the opportunity of the trial court to judge of the credibility of the witnesses." Fed.R.Civ.P. 52(a).

*Affirmed.*

TAMM, Circuit Judge, concurring in the result:

Although I agree with the result reached by the majority in this case, I would affirm the district court on the ground that the court was not clearly erroneous in holding that appellee had proved by clear and convincing evidence that appellant would not have been promoted even absent discrimination.

After Toney filed a formal complaint of racial discrimination, a hearing was conducted by an EEO Complaints Examiner. She recommended a finding of "discrimination." Findings and Recommended Decision, *In re Toney,* at 4 (Jan. 28, 1978), Appendix (App.) at 9. Based on this finding the Examiner recommended, and Toney received, priority consideration for the next GS–14-level opening in the Office of Personnel. *See* Findings of Fact and Conclusions of Law, *Toney v. Bergland,* Civ.Action No. 78–1007, at 5 (D.D.C. Oct. 9, 1981), App. at 34. Because the Examiner did not find that Toney would have been hired but for the discrimination, she proposed no back pay award. Findings and Recommended Decision, *In re Toney,* at 4–5 (Jan. 28, 1978), App. at 9–10. The Examiner's decision became the final decision of the Department when the Department failed to issue its own decision within thirty days, as required

** Our opinion in the earlier appeal of this case assumed that a "clear and convincing evidence" test was applicable. *See Toney v. Bergland, supra,* 645 F.2d at 1066. That was necessary because it was the basis upon which the District Court had entered its summary judgment. *See Toney v. Bergland,* Civ.Action No.

78–1007 at 1 (D.D.C. Sept. 14, 1979). The District Court had not found (and, on the facts of this case, probably could not have found in a summary judgment context) that race was not a factor in the employment decision. As noted above, that finding has now been made after the receipt of evidence on remand.

by 5 C.F.R. § 713.220(d) (1977) (current version at 29 C.F.R. § 1613.220(d) (1982)).[1]

Dissatisfied with the relief accorded him by the Examiner, Toney filed suit in the District Court for the District of Columbia, seeking back pay and additional relief. On cross-motions for summary judgment on the administrative record, the district court entered judgment for the Department on the basis that the Department had shown by clear and convincing evidence that Toney would not have been hired even in the absence of discrimination. Toney appealed that decision to this court, and we remanded the case because we discerned a genuine issue of fact material to the district court's finding. *Toney v. Bergland,* 645 F.2d 1063, 1064, 1067 (D.C.Cir.1981) (per curiam). We instructed the district court on remand to enter findings of fact based either on a trial or on the administrative record. *Id.* at 1070.

After a hearing in the district court on September 8 and 9, 1981, at which testimony was taken, the district judge found that "the selection of Kyle was not the result of racial discrimination." Findings of Fact and Conclusions of Law, *Toney v. Bergland,* Civ.Action No. 78–1007, at 6 (D.D.C. Oct. 9, 1981), App. at 35. The court reached this conclusion by evaluating the evidence within the framework of the three-stage test enunciated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–05, 93 S.Ct. 1817, 1824–1825, 36 L.Ed.2d 668 (1973). The court found that although the administrative record revealed that Toney had established a prima facie case of racial discrimi-

nation, the Department had articulated a legitimate, nondiscriminatory reason for not promoting Toney, and Toney had failed to prove that this reason was a pretext for discrimination. In the alternative, the district court, applying the test of *Day v. Mathews,* 530 F.2d 1083 (D.C.Cir.1976) (per curiam), found that even if the decision not to promote appellant was discriminatory, Toney was not entitled to relief because the Department had proved by clear and convincing evidence that Toney would not have been promoted even in the absence of discrimination.

Toney appealed that judgment to this court, challenging both of the district court's alternative holdings. He asserts that the court did not give proper effect to the Examiner's finding of "discrimination." *See* note 1 *supra.* He also contends that the court erred in finding that the Department had proved by clear and convincing evidence that he would not have been promoted even absent racial discrimination. Brief for Plaintiff-Appellant at 1, 7. Because of the ambiguity of the Examiner's decision in this case and the parties' dispute over its significance, I would address only the challenge directed to the district court's application of the *Day v. Mathews* standard.

On the basis of its finding that the Department proved by clear and convincing evidence that even absent discrimination Toney would not have been promoted,[2] the district court, applying the test set out in *Day v. Mathews,* 530 F.2d 1083 (D.C.Cir. 1976) (per curiam), concluded that as a mat-

1. The parties contested the nature of the Examiner's finding of "discrimination." The Department contested the liability issue on the ground that the Examiner's finding of "discrimination" was not a finding that Toney had been the victim of disparate treatment because of his race with respect to the promotion decision at issue. Toney, on the other hand, argued that the Examiner's finding meant that he had been the victim of disparate treatment because of his race.

2. The district court denominated its finding on the *Day v. Mathews* issue a "Conclusion of Law," but the court's finding that Toney would not have been hired even absent discrimination

is a finding of fact, which must be affirmed unless "clearly erroneous." FED.R.CIV.P. 52(a). Although there is a paucity of authority on this question, I believe the court's finding that this fact was proved by clear and convincing evidence is also reviewable under the clearly erroneous standard. *See Jones v. Pitt County Board of Education,* 528 F.2d 414, 417–18 (4th Cir.1975); *Hobson v. Eaton,* 399 F.2d 781, 785 (6th Cir.1968), *cert. denied,* 394 U.S. 928, 89 S.Ct. 1189, 22 L.Ed.2d 459 (1969). In my view, the district court's finding that the Department proved by clear and convincing evidence that Toney would not have been hired even absent discrimination is not clearly erroneous.

ter of law Toney was not entitled to back pay or other retroactive relief. Review of this legal conclusion is not constrained by the clearly erroneous standard. *See* 5A J. Moore & J. Lucas, eds., *Moore's Federal Practice* ¶ 52.03[2] (2d ed. 1982). I would hold that the district judge properly applied the *Day v. Mathews* test. In *Day v. Mathews* we held that an employer can defeat a successful plaintiff's right to back pay and other relief only by proving by clear and convincing evidence that the plaintiff would not have been hired or promoted even absent discrimination. This test applies only after a particular plaintiff proves that he or she was a victim of unlawful discrimination. *Milton v. Weinberger,* 696 F.2d 94, 98–99 (D.C.Cir.1982). It has no relevance to the liability phase of a Title VII suit.[3]

My focus is on the remedial stage of the case since I, like the district court, have assumed the Department's liability for unlawful discrimination. The issue at trial was whether Toney was entitled to relief in addition to the priority consideration for promotion he received as a result of the Examiner's recommendation—specifically, back pay to compensate him for the wages he allegedly would have earned had he been promoted instead of Kyle.

The legislative history of Title VII clearly shows that Congress' intent in providing for awards of back pay to successful plaintiffs was to provide a "make whole" remedy. 118 Cong.Rec. 7168 (1972) (discussing section 706(g) of the Equal Employment Opportunity Act of 1972, which is "similar" to section 706(g) of the 1964 act). Title VII remedies are intended to restore victims of

discrimination "to a position where they would have been were it not for the unlawful discrimination." *Id.* This requirement of a "but for" causal relationship between the unlawful discrimination and the claimed economic loss has been noted by the Supreme Court. In *Franks v. Bowman Transportation Co.,* 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976), the Court discussed the propriety of awards of retroactive seniority. The Court held that because section 10(c) of the National Labor Relations Act was the "model" for the remedial section of Title VII and because the two sections have the same "make whole" purpose, the standards governing the award of retroactive relief under section 10(c) of the NLRA are applicable to Title VII proceedings. *Id.* at 769, 96 S.Ct. at 1266. The Court noted that relief under section 10(c) of the NLRA is intended to " 'restor[e] the economic status quo that would have obtained *but for* the company's wrongful [act].' " *Id.* at 769, 96 S.Ct. at 1266 (emphasis added) (quoting *NLRB v. Rutter-Rex Mfg. Co.,* 396 U.S. 258, 263, 90 S.Ct. 417, 420, 24 L.Ed.2d 405 (1969)). The Court in *Franks* fully adopted the "but for" causal standard: retroactive relief under Title VII is available to the extent necessary to place the plaintiff in the same position he or she would have occupied but for the employer's discrimination. *Id.* 424 U.S. at 767, 768, 96 S.Ct. at 1265–1266; *see Albemarle Paper Co. v. Moody,* 422 U.S. 405, 418–19, 95 S.Ct. 2362, 2372, 45 L.Ed.2d 280 (1975).

It has proved easier to articulate this principle than to apply it. The Supreme Court has offered practical guidance only in

---

**3.** Some courts have applied the *Day* standard to require the employer to rebut the plaintiff's prima facie case by proving that the employment decision would have been the same even absent discrimination. *E.g., Foster v. Simon,* 467 F.Supp. 533, 536 (W.D.N.C.1979); *Jones v. Middendorf,* 454 F.Supp. 1276, 1287, 1289 (E.D. Okl.1978) (apparently applying *Day* standard at liability stage). This application of *Day* has been induced, no doubt, by the following statement in the *Day* opinion: "a *prima facie* showing of discrimination shifts the burden to the employer to prove that the employee (or applicant) would not have gotten the post in any event, even absent discrimination." 530 F.2d

at 1085. Nevertheless, immediately following the *Day* decision, the district judges of this circuit interpreted *Day* as applying at the remedial stage only. *E.g., Beckwith v. Hampton,* 430 F.Supp. 183, 184–85 (D.D.C.1977); *Stephenson v. Simon,* 427 F.Supp. 467, 472–73 (D.D.C.1976). The Supreme Court has now made it clear that the employer does not bear the burden of proof in rebutting the plaintiff's prima facie case, *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); thus, use of the *Day v. Mathews* standard to measure the adequacy of the employer's rebuttal of the plaintiff's prima facie case is clearly incorrect.

the context of individual remedial determinations in a class action. In *Franks v. Bowman Transportation Co.,* 424 U.S. 747, 773, 96 S.Ct. 1251, 1268, 47 L.Ed.2d 444 (1976), the Court discussed how an employer found liable for class-wide discrimination can defeat awards of retroactive seniority to individual class members. The Court noted that to accomplish this the employer must bear the burden of proving that there was no vacancy in the position sought, that an individual lacked the qualifications for a position sought, or that the individual, even if hired, would not have performed satisfactorily and thus would not have earned seniority from the hiring date. *Id.* at n. 32.

Similarly, in *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977), the Court discussed how an employer guilty of class-wide discrimination can defeat claims by individual class members who did not apply for jobs allegedly because of the employer's discriminatory hiring practices. The individual must first come forward with evidence of his or her qualifications for the positions he or she would have sought. The employer must then show that the claimant would not have been hired in any event because more qualified applicants would have been selected or because the claimant was not sufficiently qualified for the job. *Id.* at 369 n. 53, 97 S.Ct. at 1872 n. 53; *accord East Texas Motor Freight System v. Rodriguez,* 431 U.S. 395, 403 n. 9, 97 S.Ct. 1891, 1896 n. 9, 52 L.Ed.2d 453 (1977).

From *Franks* and *Teamsters* we know that the employer bears the burden of proving that an individual class member would not have been hired or promoted regardless of the employer's discrimination.[4] This burden is implicitly premised on application of the "but for" causal standard: an individual discriminatee is entitled to retroactive relief unless the employer can prove that factors other than discrimination would have prevented the employee from occupying the position in which the relief would place him or her. Factors mentioned in *Franks* and *Teamsters* that can permissibly account for the employment decision are (1) no vacancy in the position sought, (2) an individual's lack of qualifications for the position sought, (3) better-qualified candidates for a position who would have been chosen instead of the class member, and (4) no accrual of seniority by an individual even if he or she had been hired.

Although the Supreme Court in *Franks* and *Teamsters* indicated that the employer bears the burden of proof in seeking to defeat an individual's entitlement to relief, the Court did not elucidate how heavy a burden the employer bears. In *Franks,* however, the Court cited with approval *Baxter v. Savannah Sugar Refining Corp.,* 495 F.2d 437 (5th Cir.), *cert. denied,* 419 U.S. 1033, 95 S.Ct. 515, 42 L.Ed.2d 308 (1974), in which the Fifth Circuit held that the employer must carry this burden by "clear and convincing evidence." *Id.* at 445. The Court's citation of *Baxter* was never-

---

4. It is apparently still uncertain whether the three-stage order of proof under *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–05, 93 S.Ct. 1817, 1824–1825, 36 L.Ed.2d 668 (1973) (prima facie case, legitimate nondiscriminatory reason, pretext), applies at the individual relief stage of a class action. If so, the employer initially must merely articulate a legitimate nondiscriminatory reason for its failure to hire or promote the individual, and the claimant must then prove that this reason is only a pretext for discrimination. *See Sledge v. J.P. Stevens & Co.,* 585 F.2d 625, 637 (4th Cir.1978) (adopting a modified *McDonnell Douglas* approach at individual relief stage), *cert. denied,* 440 U.S. 981, 99 S.Ct. 1789, 60 L.Ed.2d 241 (1979). Language in the Supreme Court's decision in *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 362 & n. 50, 97

S.Ct. 1843, 1868 & n. 50, 52 L.Ed.2d 396 (1977), implies that a *McDonnell Douglas* analysis is necessary at the individual relief stage. However, the weight of authority currently seems to be that the employer's burden of articulating a legitimate nondiscriminatory reason is replaced at the individual relief stage of a class action by the burden of persuading the court that the adverse employment action was not due to unlawful discrimination. *See generally* Special Project, *Back Pay in Employment Discrimination Cases,* 35 Vand.L.Rev. 893, 924–26, 978–82, 986–87 (1982). Several courts, including this court, have applied the *Day v. Mathews* test for determining the employer's burden. *McKenzie v. Sawyer,* 684 F.2d 62 (D.C.Cir.1982); *Association Against Discrimination in Employment v. City of Bridgeport,* 647 F.2d 256, 289 (2d Cir. 1981).

theless ambiguous since the citation was only to the two pages preceding the Fifth Circuit's articulation of this standard. *Franks,* 424 U.S. at 773, 96 S.Ct. at 1268 (citing *Baxter,* 495 F.2d at 443–44). Thus, the Supreme Court has not clearly decided the question of the employer's burden of proof on this point. When faced with the issue, we followed the Fifth Circuit and adopted the clear and convincing evidence standard. *Day v. Mathews,* 530 F.2d 1083 (D.C.Cir.1976) (per curiam). *Day* is the seminal case on this issue in this circuit, and we have followed it consistently. *Weahkee v. Perry,* 587 F.2d 1256 (D.C.Cir.1978); *Rogers v. EEOC,* 551 F.2d 456 (D.C.Cir.1977) (per curiam).

Unlike *Franks* and *Teamsters,* however, which were class actions, *Day v. Mathews* was an individual Title VII suit. The employer there had been adjudged guilty of unlawfully discriminating against a particular individual with respect to a particular employment action. Although the separateness of the liability and remedial inquiries is more easily seen in a class action suit, *see* Special Project, *Back Pay in Employment Discrimination Cases,* 35 Vand.L.Rev. 893 (1982), the inquiries are equally separate in an individual Title VII suit. *Smith v. Secretary of the Navy,* 659 F.2d 1113, 1120 (D.C.Cir.1981). Apart from proving the employer's liability for discrimination, the individual plaintiff must prove that he or she is entitled to a particular form of relief. Although proof of discrimination may automatically entitle an individual to prospective relief, *see International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 361, 97 S.Ct. 1843, 1867–1868, 52 L.Ed.2d 396 (1977), it does not automatically entitle the plaintiff to retroactive relief, *see Albemarle Paper Co. v. Moody,* 422 U.S. 405, 415, 95 S.Ct. 2362, 2370, 45 L.Ed.2d 280 (1975). Nevertheless, an award of back pay "should be denied only for reasons which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination." *Id.* at 421, 95 S.Ct. at 2373 (footnote omitted).

The *Day v. Mathews* test respects the purposes of Title VII as articulated by the Supreme Court in *Albemarle.* A fundamental premise of *Day* is that proof of discrimination in the *McDonnell Douglas* sense does not necessarily negate the possibility that factors other than discrimination would have led to the same employment action. It is currently uncertain what degree of causal nexus between the consideration of an impermissible criterion and the alleged injury must be shown in order to prove discrimination under Title VII. *See generally* Brodin, *The Standard of Causation in the Mixed-Motive Title VII Action: A Social Policy Perspective,* 82 Colum.L. Rev. 292 (1982). It is at least clear that the Title VII plaintiff need not prove that the discriminatory factor was the *sole* factor in the employment decision. 110 Cong.Rec. 13,837–38 (1964) (amendment that would have required proof of sole causation rejected by Congress); *see generally* Brodin, *supra,* at 296–97. The Supreme Court has not expressly decided the issue, *cf. McDonald v. Santa Fe Trail Transportation Co.,* 427 U.S. 273, 282, 96 S.Ct. 2574, 2579, 49 L.Ed.2d 493 n. 10 (1976) (suggesting that proof of pretext requires proof of "but for" causation), and other federal courts have wavered among "but for," "substantial factor," and "a" factor causation. *See generally* Brodin, *supra,* at 308–09. The best view is that proof of unlawful discrimination requires merely proof that discrimination was a factor in the employment decision. *See* 110 Cong.Rec. 13,088 (1964) (remarks of floor manager, Sen. Humphrey) ("What the bill does ... is simply to make it an illegal practice to use race as a factor in denying employment."); *Jones v. Trailways Corp.,* 477 F.Supp. 642, 646 (D.D.C.1979); *cf. Cuddy v. Carmen,* 694 F.2d 853, 856–57, 858 n. 23 (D.C.Cir.1982) (under Age Discrimination in Employment Act, plaintiff must prove that age was "a determining factor" in the employment decision); *see generally Cunningham v. Central Beverage, Inc.,* 486 F.Supp. 59, 62–63 (N.D.Tex.1980); Brodin, *supra,* at 310 n. 80 (suggesting that a less rigorous causation standard should apply in

Title VII cases because Title VII is aimed at "invidious discrimination").

Once the plaintiff proves the employer's liability, the *Day v. Mathews* standard allows the employer to prove that discrimination was not the *decisive* factor in the decision and thereby to disprove a "but for" causal connection between the discrimination and the employment action. *See Beckwith v. Hampton,* 430 F.Supp. 183, 184–85 (D.D.C.1977); *see also Cunningham v. Central Beverage, Inc.,* 486 F.Supp. 59, 62 (N.D. Tex.1980). Allowing the employer to defeat a claim for retroactive relief by disproving "but for" causation effectuates Title VII's "make whole" purpose. If the employer were not allowed to show that the same employment decision would have resulted even absent discrimination, the Title VII plaintiff who receives retroactive relief might be placed in a better position than he or she would have occupied if the employer had not acted unlawfully. *See Mt. Healthy City School Dist. Board of Educ. v. Doyle,* 429 U.S. 274, 285–86, 97 S.Ct. 568, 575, 50 L.Ed.2d 471 (1977); *see also Mallard v. Claytor,* 471 F.Supp. 16, 22 n. 1 (D.D.C. 1978).[5]

Similarly, the separation of the liability and remedial inquiries and the differing standards of causation at those stages reflect the deterrent purpose of Title VII. By making an impermissible criterion even a factor in an employment decision, the employer faces liability for declaratory, injunctive, and other prospective relief. *See generally* Brodin, *supra,* at 318 n. 110. Although prospective relief may not be as costly to the employer as an award of back pay, compliance with a court's relief orders has some costs; these costs, and the finding of liability itself, undoubtedly deter the employer from unlawfully discriminating.

The requirement of clear and convincing proof also furthers Title VII's deterrent purpose. By making it more difficult for employers to defeat successful plaintiffs' claims to retroactive relief, the higher standard of proof may well discourage unlawful conduct by employers. *See Day v. Mathews,* 530 F.2d at 1086. In addition, the higher standard of proof is justified by the consideration that the employer is a wrongdoer whose unlawful conduct has made it difficult for the plaintiff to show what would have occurred in the absence of that conduct. *See id.; see also International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 359 n. 45, 97 S.Ct. 1843, 1867 n. 45, 52 L.Ed.2d 396 (1977). Some courts, however, have spurned the clear and convincing evidence standard, holding that the employer's burden of proof is by a preponderance of the evidence. *Richerson v. Jones,* 551 F.2d 918, 923–25 (3d Cir.1977); *United Transportation Union Local No. 974, AFL–CIO v. Norfolk & W. Ry. Co.,* 532 F.2d 336, 341 (4th Cir.1975), *cert. denied,* 425 U.S. 934, 96 S.Ct. 1664, 48 L.Ed.2d 175 (1976). In light of the purposeful rationale for requiring clear and convincing proof and the lack of a compelling justification for adopting the preponderance of the evidence standard, I would reaffirm our adherence to the *Day v. Mathews* test.[6]

Misapplication of the *Day v. Mathews* standard at the liability stage of Title VII cases, *see* note 3 *supra,* and use of the standard at the individual relief stage of Title VII class actions, *see* note 4 *supra,* have led to confusion and doubt about the wisdom of the *Day* test. I believe, however, that properly applied the standard admirably serves the purposes of Title VII. The separation of the liability and remedial

5. Shifting the burden of proof from plaintiff to employer is consistent with the Supreme Court's analysis of the causation issue in *Village of Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. 252, 270 n. 21, 97 S.Ct. 555, 566 n. 21, 50 L.Ed.2d 450 (1977) (once plaintiff establishes that race was "a motivating factor" in the decision, burden shifts to defendant to prove that other, permissible considerations would have led to same result).

6. The Ninth Circuit has adopted the *Day v. Mathews* standard in determining the appropriate remedy in cases of individual discrimination. *Nanty v. Barrows Co.,* 660 F.2d 1327, 1333 (9th Cir.1981); *Marotta v. Usery,* 629 F.2d 615, 618 (9th Cir.1980). *See also Maine Human Rights Comm'n v. City of Auburn,* 425 A.2d 990, 995–96 (Me.1981) (adopting *Day* standard for use at remedial stage of suits brought under Maine Human Rights Act).

inquiries and the differing standards of causation at those stages—which are inherent in *Day*—further Title VII's compensation and deterrent purposes while balancing the competing interests of the plaintiff, the employer, and the public. *Accord* Brodin, *supra,* at 323–26. I would affirm the district court's judgment because the court correctly applied *Day* solely in determining the appropriate remedy for the unlawful discrimination and correctly required the Department to prove by clear and convincing evidence that Toney would not have been promoted even in the absence of discrimination.