Robert J. TONEY, Appellant,

v.

Robert BERGLAND, Secretary of Agriculture, U. S. Department of Agriculture.

No. 79–2347.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 2, 1981.

Decided March 4, 1981.

James P. Springer, Falls Church, Va., for appellant.

Robert C. Seldon, Asst. U. S. Atty., Washington, D.C., with whom Charles F. C. Ruff, U. S. Atty., John A. Terry, John R. Fisher and Diane M. Sullivan, Asst. U. S. Attys., Washington, D.C., were on brief, for appellees.

Before PECK *, United States Senior Circuit Judge for the Sixth Circuit and MacKINNON and GINSBURG, Circuit Judges.

Opinion PER CURIAM.

PER CURIAM.

Appellant Robert J. Toney filed a complaint in the district court for damages, back pay, retroactive grade increase, and equitable relief against the Department of Agriculture. The complaint alleged that the Department's rejection of Toney for an open position in its Office of Personnel was a result of racial discrimination proscribed by Title VII of the Civil Rights Act of 1964, as extended by the Equal Opportunity Act of 1972, 42 U.S.C. § 2000e *et seq.* After the Department's answer and the parties' cross-motions for summary judgment based on the administrative record, the district court granted the Department's motion for summary judgment and denied Toney's. Toney now appeals.

We conclude that the administrative record on which the district court relied fails to show "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). We therefore reverse and remand for supplemental proceedings, including the taking of testimony as appropriate, on the issues raised by Toney's action.

## I. BACKGROUND

### A. The Selection Process

In March 1976, Toney, a black GS–230–13 Employee Relations Specialist in the Security and Operations Division of the Department's Office of Personnel, applied for the position of Supervisory Employee Relations Specialist, GS–230–14. The eligibility requirements stated in the job vacancy announcement were:

a minimum of three (3) years general experience of a progressively responsible nature . . . and at least three (3) years of specialized experience in various areas of employee relations. One year of this spe-

cialized experience must have been performed at the GS–13 level.

The announcement attracted 17 applicants, all of whom were evaluated by a panel of three high-ranking employees of the Office of Personnel. One of the members, William Riley, was Toney's immediate supervisor.

Of the 17 applicants, 13 were rated qualified under Qualification Standard X–118, which specifies education and experience requirements. Among those so rated were Toney and the person ultimately selected, Donald Kyle, who was a GS–201–13 Personnel Management Specialist. Two of the qualified 13 applicants were black.

The three member panel made its next cut by applying four criteria supplied to the panel by John Sullivan, the Chief of Personnel Operations Division, and one of the two selecting officials. The selection criteria were: (1) recent *operational* experience in employee relations; (2) familiarity with job classification and its relationship with employee relations; (3) recent experience in dealing with supervisors and managers at all levels; and (4) experience in labor management relations. The panel applied these criteria to the applicants' Standard Form (SF) 171's and the applicants' most recent performance evaluation. Each panel member rated each candidate and the panel arrived at a consensus that narrowed the list to four "best qualified" applicants. Toney was not on this list, and all of its members were white.

The list was sent to Sullivan and Sylvester Pranger, Director of Personnel. After interview, these officials selected one of the four, Donald Kyle, pending a full security clearance requested on May 3, 1976.

Soon thereafter, Toney discovered the fate of his application and convinced both Pranger and Sullivan he should have made the "best qualified" list. Sullivan and Pranger then directed that the three member panel reconvene June 1, and gave them a new set of criteria to apply to the applications of the 13 qualified applicants. Selection criterion # 1, for instance, was broad-

---

* Sitting by designation pursuant to 28 U.S.C. § 291(a).

ened to include staff experience as well as operational experience, and selection criterion # 2 was broadened to include knowledge of other personnel areas not primarily classification.

The result of this second panel evaluation was that Toney and another candidate, who was white, were added to the "best qualified" list. After interviews, Pranger and Sullivan again chose Kyle. On June 21 Toney filed a formal EEO complaint. He alleged that the Department did not want to put a black employee in the position at issue and that Kyle failed to meet the basic qualifications for the position.

## B. Administrative Proceedings

Toney's charge resulted in a supplemental investigation and in a hearing before the EEO Complaints Examiner. The Examiner found that the ranking criteria used by the first panel were unreasonable but not evidence of racial discrimination, inasmuch as they slighted not only Toney but also a white applicant. Other evidence, however, was thought by the Examiner to trigger a "presumption of institutional or systemic discrimination within [the Office of Personnel]" that the evidence of record did not overcome. App. 7. That evidence included the fact that Toney's supervisor Riley rated him "Don't Know" in 13 of the 28 categories listed on Toney's supervisory appraisal. Many of the categories marked "Don't Know" were "important to the position being filled," the Examiner found, and involved work done under Riley's supervision, although Riley testified he had never personally observed Toney doing them. Kyle, by contrast, received a "very good appraisal" from another supervisor. *Id.* The Examiner recommended a decision finding discrimination but no reprisal. She further recommended, *inter alia*, that Toney receive priority consideration for the next GS–14 level vacancy within the agency for which he was qualified.

Seeking additional relief, primarily in the form of back pay and retroactive promotion, Toney appealed within the Department. A final agency decision, in May 1978, adopted with approval the Examiner's finding that the panel's selection procedures were not racially discriminatory. App. 11. The agency questioned, however, the Examiner's finding of institutional discrimination, including her reliance on the fact that "the supervisor who rated Mr. Toney gave him a different rating than the one a different supervisor gave the person selected." App. 11. "Support or rationale for the Complaint Examiner's findings are somewhat confusing and questionable since they are based on examples not under the control of any one individual . . . ." App. 12. Nevertheless, the Examiner's recommendation finding discrimination became the final Department decision because the "decision was not made within the 30 day period required by Section 713.220(d) of Part 713 of the Civil Service Commission's regulations." *Id.*

Still seeking back pay and other additional relief, Toney filed this action in district court.

## C. Proceedings in the District Court

Toney filed his complaint in district court in June 1978, alleging he had been denied promotion "because his race is black." App. 20. The Department's answer denied the allegations of racial discrimination. App. 26. Both parties then moved for summary judgment on the basis of the administrative record. For purposes of summary judgment, the Department "[did] not dispute that it [was] bound by the department's finding of discrimination," the district court noted. App. 153. That left only the issue whether Toney should be denied retroactive relief and money damages on the basis that even absent the discrimination he would not have been selected for the position in question. The district court found that proposition supported in the undisputed factual record by "clear and convincing evidence." App. 155.

The court read the administrative record to leave no genuine issue as to whether the Department would have hired Kyle (or someone else other than Toney) in the absence of discrimination. The court held

that Kyle met the minimum qualifications of the position and noted the testimony of one of the selecting officials, Pranger, that Kyle's "greater experience" made him the most qualified candidate. Moreover, in addition to Kyle, another "individual on the list was also well qualified for the position, but was not selected because of a policy of hiring from within the agency." App. 154–55. The court concluded "a careful review of the record demonstrates that the credentials and evaluations of Mr. Kyle and several other candidates were sufficiently superior to plaintiff's to warrant the conclusion that the selection was based on merit." Id. The court then cited to several exhibits developed through the administrative investigation. One of these exhibits, I.R. Supp. Ex. 4, *reprinted in* App. at 186–95, is the report of the first evaluation panel. Other exhibits cited include statements taken from the two selecting officials, Pranger and Sullivan.

## II. ANALYSIS

█ Our standard of review depends on whether we treat the district court's action as a grant of a summary judgment motion or as a trial on a stipulated record. Trial findings, of course, must be affirmed unless clearly erroneous, with the inferences generally drawn in the judgment's favor. On review of a summary judgment, on the other hand, the party against whom summary judgment was granted has the benefit of all reasonable evidentiary inferences that can be drawn in his favor. See generally *Vetter v. Frosch,* 599 F.2d 630 (5th Cir. 1979). The losing party is especially entitled to the benefit of reasonable factual doubt where, as here, the successful party had the burden to make his case by "clear and convincing" evidence. *Day v. Mathews,* 530 F.2d 1083, 1085 (D.C. Cir. 1976) (once employee makes showing of racial discrimination in promotion, employer is liable for retroactive relief absent clear and convincing showing that even absent the discrimination the employee would not have been promoted).

█ In some circumstances cross-motions for summary judgment in a federal employee Title VII case may be treated for purposes of review as a mutual request for trial on the stipulated administrative record. *E. g., Vetter v. Frosch,* 599 F.2d 630 (5th Cir. 1979). Here, however, the language of the district court's opinion and the papers of the parties indicate that a true summary judgment was intended. We therefore apply a standard of review that requires us to reverse if the administrative record fails to preclude a genuine issue of material fact. See Fed.R.Civ.P. 56(c).

### A. Whether Summary Judgment was Appropriate

Applying that standard, we find the evidence relied upon by the district court to be inconclusive. Several of the evidentiary items cited by the court were tainted—or one could reasonably infer they were tainted—by procedures and practices that the Complaints Examiner found to be unreasonable or evidence of a prima facie case of racial discrimination.

For example, the court adjudged Kyle and "several other candidates" clearly superior in qualifications to Toney and then cited to the findings of the first evaluation panel. Yet that panel was using criteria, such as a sole reliance on operational experience to the exclusion of any reliance on staff experience, that, the Complaints Examiner found, unreasonably tilted the results against Toney. Moreover, *both* panels based their judgments not only on the applicants' SF–171's, but also on the applicants' "most recent performance evaluation." App. 186. This evaluation, presumably, was the supervisory appraisal. It is a reasonable inference that Toney's adverse appraisal, cited by the Complaints Examiner as evidence of a prima facie case of racial discrimination, thus infected the evaluation of both panels. It is also fair to infer from this record that these evaluations in turn played some substantial role in the ultimate selection of Kyle over the other candidates, for Pranger, one of the two selecting officials, stated, "I reviewed the SF–171's *and*

*the panel evaluation* of each of the candidates of the Best Qualified Roster. In my opinion Kyle was far better qualified for the position." App. 197–98.

■ The administrative record thus does not foreclose any dispute that Kyle clearly would have been the selectee even absent discrimination. Nor is it apparent, without some further explanation, that any other candidate was clearly superior to Toney. The district court relates Pranger's testimony that "another individual on the list was also well qualified for the position, but was not selected because of a policy of hiring from within the agency." App. 154–55. This statement implies that the other individual was better qualified than Toney, but it does not remove the reasonable inference that Toney's adverse supervisory appraisal played a substantial role in the determination that he was not also "well qualified for the position." Because the undisputed facts in the administrative record do not make a clear and convincing showing that someone other than Toney would have been selected in the absence of racial discrimination, the summary judgment in the Department's favor is reversed.

Having made that determination, we are immediately met by Toney's contention that the district court should have granted summary judgment *for him*. His basic claim is that the "selection process [was] tainted to its core" (Appellant's brief at 45), and that there is no way that the district court could find for the Department on the issue of causality.

We disagree that Toney is entitled to summary judgment as a matter of law. The evidence that Kyle would have been selected even absent discrimination, while not conclusive, is sufficient to create a genuine issue of fact. First, Toney's assertion that Kyle's selection was irredeemably tainted by improper procedure is rebutted by the testimony of a selecting official, Pranger, that Kyle was "far better qualified" than Toney for the vacant position based on "[t]he total experience of both individuals, the knowledge that I would have of both of them working in a relative-

ly small office of a little over 100 people primarily." App. 346. Pranger added, "Well, the most glaring item in my mind, and I am going to state this is a judgmental factor, is ·the significantly greater experience that Kyle had had over the years in the area of employee relations, including the full range labor relations and things like that." App. 347. Of course, this testimony—indicating Pranger's clear preference for Kyle on the basis of Kyle's experience and Pranger's own observations—may be inconsistent with Pranger's earlier statement indicating he relied in some part on the panel evaluations. See App. 197–98 (quoted at p. 8 *supra*). However that may be, this testimony alone is basis for a reasonable inference that the Department can clearly and convincingly demonstrate that racial discrimination was not the reason Toney was passed over.

Toney contends that reliance on Kyle as the selectee even absent discrimination is improper because Kyle failed to meet the minimum requirements of the job. Specifically, Toney asserts that Kyle failed to meet the vacancy notice's requirement of performing "[o]ne year of this specialized experience [in various areas of employee relations] at the GS–13 level" and that Kyle also failed to satisfy the requirements of Qualification Standard X–118. The government responds that it need only show that Kyle was selected for non-discriminatory reasons and in any event disputes Toney's contentions as to Kyle's lack of qualifications.

■ We need not reach the government's argument that a non-discriminatory rationale would be sufficient, for we find the record supports a reasonable inference that Kyle clearly met the minimal qualifications of the job in question.

We first examine the contention that Kyle failed to meet the basic requirements set out in Qualification Standard X–118. These requirements, applicable to one aspiring to be a personnel officer at the GS–11/15 levels, include three years of "specialized experience" (App. 228), which may consist of:

(1) Experience in the specialized kind of work as described in part I of this standard; or

(2) Experience in a combination of the kind of work covered by the series involved and other substantive personnel management specialist work, *provided*:

(a) It can be clearly established that the candidate's total experience in the functional specialization of the position to be filled was at least one year, and

(b) At least six months of the experience was at a level of difficulty comparable to the next lower grade or the second lower grade in the specialization. [*reprinted in* App. at 229.]

Kyle, on the basis of his SF–171 and supplemental attachments, clearly met this part of the standard. Kyle had worked, prior to his two year stint as a GS–201–13, for two years as a GS–230–12, for one year as a GS–230–11, and for another two years as a GS–201–9. See App. 207–10. It thus appears that he met the three year requirement on the basis of paragraph (1) alone, since his three years as a GS–230 was "[e]xperience in the specialized kind of work as described in part I of [the] standard." The parties, however, have addressed paragraph (2), and so we address it also. Here again it appears that Kyle clearly qualified. His work at the GS–12 and 13 levels alone provided him with more than the necessary three years in "a combination of the kind of work covered by the series involved and other substantive personnel management specialist work." Kyle also met the requirements of the proviso: (a) his "total experience" in formal GS–230 work was "at least one year" and (b) "[a]t least six months was at "the second lower grade [GS–12] in the specialization."

Toney reads X–118 to establish an additional requirement, which he claims Kyle lacks. The basis for Toney's view is X–118's "Level of Experience" requirement:

*Level of experience*

Except for those who qualify solely on the basis of education, candidates for positions at grades GS–11 and below must have had at least six months of experience at a level equivalent to the next lower grade in the Federal service, or one year equivalent to the second lower grade. Candidates for grades GS–12 and above must have had at least one year of experience equivalent to the next lower grade. [*reprinted in* App. at 230.]

Toney interprets the last sentence, *supra*, to require that "the specialized experience be at the *next* lower level." Appellant's brief at 25. Toney then points out that Kyle's GS–230–12 experience is not enough. We disagree with Toney's interpretation. The standard does not specify "specialized" experience; the plain meaning of its language is that any experience at the appropriate grade would suffice. As a candidate for grade GS–14 Kyle met the requirement with his two years as a GS–13.

Toney asserts, however, that his interpretation of X–118 is "corroborated by the vacancy announcements introduced at the administrative hearing." Appellant's brief at 25. Our examination of the vacancy announcements does not bear this out. It is true that some announcements do require "at least 1 yr. of specialized experience equivalent to next lower level," see, *e. g.*, App. 381 (Employee Relations Specialist GS–230–12/13). There are abundant examples, however, of vacancy announcements that can easily be read to require simply a year of experience at the next lower level, with no requirement that that year have involved work in the same specialized series. See, *e. g.*, App. 363 (for GS–230–11/12 "[o]ne year of experience must be at the GS–9 or GS–11 level respectively"); App. 365 (for GS–201–13/14 "[a]pplicants must have served at least one year at the next lower grade . . ."); App. 366 (for GS–230–12 "[a]pplicants must have served at least one year at the GS–11 level and have competitive status"); App. 369 (for GS–221–9, one year must have been at GS–7; for GS–221–11, one year at GS–9; for GS–12, one year at GS–11; App. 373 (for GS–212–13, one year must have been at GS–12; for GS–212–14, one year must have been at GS–13); App. 377 (for GS–230–11, at least 6 mos. or experience must be equivalent to

GS–10 or 1 yr. at GS–9; for GS–12, at least 1 year must be equivalent to GS–11; at GS–13, at least 1 year at GS–12); App. 380 (for GS–212–9/11/12, "[a]t least 6 months of exper. must have been at a level equivalent to the next lower grade, or 1 yr. equivalent to the second lower grade for GS–9 & 11. Candidates for GS–12 must have had 1 yr. of exper. equiv. to the next lower grade."); App. 382 ("Candidates [for GS–201–14] must have served at least 1 year at the GS–13 level or equivalent."); App. 383 (for GS–235–13 one year must have been at the GS–12 level).

These examples demonstrate that in at least several instances the "Level of Experience" requirement of X–118 was interpreted in accordance with its plain meaning. That is, the vacancy announcements simply required experience at the next lower grade, and did not require specialized experience. Announcements that required the next-lower-grade experience to be specialized experience went beyond the literal requirements of X–118 and appear to have been exceptions rather than examples of an informal interpretative agency rule. It is worth noting in this connection that the Department labels the vacancy notice requirement in this case as a mistake. Gov't brief at 4.

Toney would argue that regardless of whether Kyle met the X–118 requirements, it is the one-year-of-specialized-experienced requirement of the vacancy announcement that must control. Neither the Complaints Examiner nor the district court agreed with this view. The former found Kyle's GS–201–13 experience "only peripherally involved aspects of employee relations," App. 5, and made no finding as to whether Kyle met the literal terms of the vacancy announcement requirement. For her it was sufficient that "Kyle's background could reasonably be found to qualify him for a GS–230–14 position under the terms of the Civil Service Commission's Handbook X–118." *Id.* The district court similarly disposed of this issue. It relied on the testimony of Personnel Staffing Specialist Mark Sayko, who drafted the vacancy announcement and determined that Kyle qualified

under it, to establish that "Kyle and plaintiff[ ] were evaluated under and met the requirements of the CSC handbook, Qualifications Standards, X118, December 1968." App. 154.

Even if we were to accept Toney's view, and hold that the vacancy announcement notice is to control to the extent that its requirements are stricter than those of the X–118 standard, we are not convinced that Toney is entitled to a summary judgment that the Department cannot make its case on this point. In this connection we note that Kyle, at the time of his application for the GS–230–14 post, had been for two years a GS–201–13 Personnel Management Specialist. As such, he had performed work "in two or more of the specialized personnel management functions described" in Part I of Qualification Standard X–118: Personnel Staffing Specialist (GS–212), Position Classification Specialist (GS–221), Salary and Wage Administration Specialist (GS–228), Employee Relations Specialist (GS–230), and Employee Development Specialist (GS–235). In determining that Kyle (as well as four other GS–201–13 Personnel Management Specialists) qualified for the vacancy notice requirement of one year of specialized GS–13 experience "in various areas of employee relations," Personnel Staffing Specialist Sayko reviewed the description of Kyle's GS–201–13 work and determined it qualified as employee relations work. Sayko specifically singled out Kyle's advisory role in matters "pertaining to employment policies and practices" concerning "corrective actions," "reductions-in-force," and "employment matters involved in appeals at the Department level." Sayko also pointed to Kyle's analysis of "written classification evaluations on positions under appeal." Sayko concluded, "In my personal opinion, I think you could get just about any [Personnel Staffing Specialist] in here and they would qualify this person [Kyle]." I EEO Complaint Hearing Transcript 60; App. 208. We find this testimony, presented by the expert in the field who drafted the vacancy announcement, sufficiently strong to preclude summary judgment for Toney,

even assuming that the announcement's requirement of one year of specialized GS–13 experience is to control.

The foregoing examination convinces us that, at the least, Toney is not entitled to summary judgment as a matter of law. The administrative record leaves room for the government to argue that Toney would not have been chosen even absent any discrimination.

### B. Scope of Remand

■ We have determined that summary judgment for neither party is appropriate because the administrative record presents a genuine issue of material fact for trial. Toney, of course, is entitled to trial *de novo*, *Chandler v. Roudebush*, 425 U.S. 840, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976). Either party may wish to produce additional evidence or may choose to rest once again on the administrative record. However the parties choose to proceed, the district court should make findings of fact that we can review under a clearly erroneous standard.

The government argues here that the Secretary should not be bound by the Examiner's recommended finding of discrimination, which became the Department's finding because of its dilatory review. Toney argued before the district court that the Department was estopped to challenge that finding. That issue has not been fully argued here and we do not decide it. The government's ability to relitigate the discrimination issue, whether by relying once more on the administrative record or by producing new evidence, is a question we leave to the district court on remand.

So ordered.