783 F.2d 672
 40 Fair Empl.Prac.Cas. 264,
39 Empl. Prac. Dec. P 35,984
Clarence BEAVEN, Plaintiff-Appellant,
v.
COMMONWEALTH OF KENTUCKY; Department of Community and
Economic Development; and Ralph A. Coldiron,
Director of the Department of Local
Government, Defendants-Appellees.
 No. 84-5571.
 United States Court of Appeals,
Sixth Circuit.
 Argued Oct. 31, 1985.
Decided Feb. 19, 1986.
 
 Bruce L. McClure, Michael L. Baker (argued), Covington, Ky., for plaintiff-appellant.
 David A. Armstrong, Atty. Gen., Frankfort, Ky., Linda Carnes Wimberly, Carl T. Miller, Jr. (argued), Terry W. McBrayer, Lexington, Ky., for defendants-appellees.
 Before KEITH and KENNEDY, Circuit Judges, and EDWARDS, Senior Circuit Judge.
 KEITH, Circuit Judge.
 
 
 1
 Plaintiff, Clarence Beaven, appeals from a district court order granting summary judgment to the defendants, Commonwealth of Kentucky, the Department of Community and Economic Development and Ralph Coldiron, Director of the Department of Local Government. Plaintiff filed suit on December 23, 1981 alleging that he had been terminated from employment for racially discriminatory reasons in violation of Title VII of the Civil Rights Act of 1964, Section 706(f) 42 U.S.C. Sec. 2000e-5(f); 42 U.S.C. Sec. 1983; and 28 U.S.C. Sec. 1343(3). Upon consideration of the defendants' motion for summary judgment, the United States District Court for the Eastern District of Kentucky concluded that plaintiff had omitted an essential element of a prima facie case of discriminatory discharge by failing to show that his employer had continued to seek applications for the position vacated by his dismissal. The district court entered an order dismissing all of plaintiff's claims on June 11, 1984. We reverse the district court judgment and remand for further proceedings.
 
 A.
 FACTS
 
 2
 The facts, viewed most favorably to Mr. Beaven, are as follows. Clarence Beaven, a black male, worked for the Commonwealth of Kentucky in the Department of Community and Economic Development from October 1977 until December 1980 when he was fired. In his position as a program advisor with the Department, Mr. Beaven helped administer federally funded disaster relief programs in Eastern Kentucky. His duties required extensive road travel to negotiate construction contracts, seek minority contractors and hire personnel throughout the region. Prior to completing a road trip scheduled for the first week of August 1980, Mr. Beaven submitted an itinerary indicating he would be in two Southeastern counties on August 7, 1980. However, upon receiving news of a contractor's problem on August 6, 1980, Mr. Beaven agreed instead to drive his State issued car to Northern Kentucky on August 7, 1980. Mr. Beaven did not notify defendant Ralph Coldiron, his immediate supervisor, of the change in his scheduled itinerary.
 
 
 3
 Once in Northern Kentucky, Mr. Beaven contacted Candice Banker, a friend whom he had asked to type a construction bid for a local minority contractor. Mr. Beaven then agreed to drive Ms. Banker a quarter mile over the Kentucky border into Cincinnati so that she could return the typewriter, run some errands and, with Mr. Beaven's help, rent a car. At the car rental agency Mr. Beaven presented the agent with a personal credit card and his state credit card to verify his identity. The rental agent called the Department to confirm Mr. Beaven's identity and Director Coldiron was notified of the rental transaction.
 
 
 4
 Mr. Coldiron thereupon requested that his assistant document Mr. Beaven's location on August 7, 1980. The assistant reported in a memorandum that Mr. Beaven told her he had been in Eastern Kentucky on August 7, 1980. Mr. Beaven, however, maintained that he reported being in Newport, Northern Kentucky, a city on the Ohio border near Cincinnati where Mr. Beaven rented the car for Ms. Banker. Without further proceedings, Mr. Coldiron dismissed Mr. Beaven on September 26, 1980 for misuse of an official car beyond state borders, unauthorized departure from a weekly itinerary and lying to a supervisor about his location on August 7, 1980. Mr. Beaven appealed his dismissal to the Kentucky Personnel Board alleging racial discrimination. After a hearing held in March 1981, the Board concluded no discriminatory motive lay behind Beaven's dismissal and that he had been fired for violating travel regulations and making a false statement. Thereafter, defendants did not fill Mr. Beaven's position but reallocated his duties to local government officials.
 
 
 5
 Mr. Beaven filed suit in the United States District Court for the Eastern District of Kentucky alleging that his dismissal was due to racially discriminatory disparate treatment by the defendants. In his complaint, Mr. Beaven contended that program advisors routinely deviated from their itineraries without prior approval, and that the Director knew of and tolerated these routine, unapproved deviations including the practice of driving state cars over state borders for short trips. Mr. Beaven further alleged that his forray into Cincinnati was connected with his controversial efforts to secure minority contractors, that white program advisors who committed the same violations of travel regulations had not been fired and that Coldiron had failed to accord Beaven the customary verbal warning and hearing given to employees who violate state travel regulations. The defendants submitted that Beaven was properly fired for violating procedures and lying to his supervisor, and moved for judgment on the pleadings or in the alternative, partial summary judgment.
 
 
 6
 The district court granted summary judgment for the defendants on the Title VII claim because Mr. Beaven had failed to establish a prima facie case of discriminatory discharge. Citing Potter v. Goodwill Industries, 518 F.2d 864, 865 (6th Cir.1975), the district court determined that Beaven's inability to show that his vacant position had been filled precluded satisfaction of the third element necessary to establish a prima facie case of discriminatory discharge: that the employer continued to solicit applications for the vacant position.
 
 
 7
 On appeal, Mr. Beaven contends a prima facie case of discriminatory discharge does not always require proof that the employer sought applicants for the plaintiff's vacant position and that the district court failed to account for his status as a merit employee who, but for his dismissal, was entitled to other state jobs upon completion of the disaster relief program. The defendants maintain the district court necessarily dismissed Mr. Beaven's Title VII claim for failure to present the required elements of a prima facie case of discriminatory discharge.
 
 B.
 DISCUSSION
 
 8
 We note initially that the record shows Mr. Beaven was a merit employee who, had he not been fired, would have been entitled to reassignment to another position upon completion of the disaster relief program. If this is the case, then the argument that plaintiff failed to show his eliminated job was filled is untenable. As a merit employee entitled to further employment, Mr. Beaven's next position would presumably have been kept open for him but was instead offered to another employee after Beaven was dismissed. In determining that plaintiff failed to show the defendants sought to fill his vacant position, the district court failed to consider Beaven's status as a merit employee and the possibility that defendants had offered Beaven's next position to a white employee. However, upon consideration of the purpose served by the prima facie case in Title VII litigation, we hold that in the absence of efforts to fill Mr. Beaven's vacated position, a prima facie case of the defendant's alleged racial discrimination in firing him may be established by the evidence of disparate treatment.
 
 Prima Facie Case
 
 9
 A plaintiff bringing action for a violation of Title VII has the initial burden of establishing a prima facie case that his employer discriminated against him because of his race, color, religion, sex or national origin. Cooper v. Federal Reserve Bank of Richmond, 467 U.S. 867, 104 S.Ct. 2794, 81 L.Ed.2d 718 (1984). A prima facie case of disparate treatment under Title VII must establish by a preponderance of the evidence that the defendant took action affecting the plaintiff's compensation, terms, conditions or privileges of employment under circumstances which give rise to an inference of unlawful discrimination. Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981); Jasany v. United States Postal Service, 755 F.2d 1244, 1249-50, n. 5 (6th Cir.1985); Jackson v. RKO Bottlers of Toledo, Inc., 743 F.2d 370, 374 (6th Cir.1984). Thus, the prima facie case focuses upon the primary factual inquiries of any disparate treatment case: " '[whether] the defendant intentionally discriminated against the plaintiff' ", and whether the employer treats people less favorably than others because of race, color, religion, sex or national origin. United States Postal Service Board of Governors v. Aikens, 460 U.S. 711, 715, 103 S.Ct. 1478, 1481, 75 L.Ed.2d 403 (1983) (quoting Burdine, 450 U.S. at 253, 101 S.Ct. at 1093 and Furnco Construction Corp. v. Waters, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978) (quoting Teamsters v. United States, 431 U.S. 324, 335, n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (1977)).
 
 
 10
 The Supreme Court first set forth a model for a prima facie case of disparate treatment racial discrimination in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The court ruled that a plaintiff alleging racial discrimination in rehiring establishes a prima facie case by showing that he belongs to a racial minority; that he applied and was qualified for a job for which the employer was seeking applicants; and that after his rejection, the position remained open and the employer continued to seek similarly qualified applicants. 411 U.S. at 802, 93 S.Ct. at 1824. The McDonnell Douglas Court, however, never intended that this identical framework be applied to all disparate treatment cases. See McDonnell Douglas, 411 U.S. at 802, n. 13, 93 S.Ct. at 1824, n. 13; see also Texas Department of Community Affairs v. Burdine, 450 U.S. at 253-54, n. 6, 101 S.Ct. at 1093-94 n. 6. As noted recently in Aikens, "[t]he prima facie case method established in McDonnell Douglas was 'never intended to be rigid, mechanized, or ritualistic. Rather, it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination.' " U.S. Postal Service Board of Governors v. Aikens, 460 U.S. 711, 715, 103 S.Ct. 1478, 1481, 75 L.Ed.2d 403 (1983) (quoting Furnco Construction Corp. v. Waters, 438 U.S. at 577, 98 S.Ct. at 2949).
 
 
 11
 In Potter v. Goodwill Industries of Cleveland, 518 F.2d 864 (6th Cir.1975), a case involving a claim of racially discriminatory dismissal and conditions of employment, this Court reiterated the McDonnell Douglas prima facie standard. However, the Court found a prima facie case established where the plaintiff presented evidence that she was black; that because of a physical disability she needed a stool to do her job; that she was not always provided with a stool; and that a white employee who also needed a stool was always provided one. 518 F.2d at 865. The Potter Court affirmed judgment against the plaintiff because the defendant had rebutted her prima facie case with evidence that plaintiff was provided with a stool and that she was fired for refusing to perform her job. Id.
 
 
 12
 Plaintiff Beaven contends on appeal that the district court erroneously relied on Potter to conclude that a prima facie case of discriminatory discharge must always show that the employer continued to seek applications after plaintiff's dismissal. We agree with this contention. As noted above, although the Potter Court restated the McDonnell Douglas criteria, the Court found a prima facie case established on the basis of plaintiff's evidence showing disparate treatment, and not upon a showing that the employer sought to fill her vacated position. See 518 F.2d at 865. Moreover, in our view, requiring a plaintiff to establish a McDonnell Douglas criterion which has no bearing upon the question of disparate treatment or upon the defendant's motive for dismissing plaintiff is precisely the kind of mechanistic application of the McDonnell Douglas model proscribed by the Supreme Court. See United States Postal Service Board of Governors v. Aikens, 460 U.S. 711, 715, 103 S.Ct. 1478, 1481, 75 L.Ed.2d 403 (1983). Plaintiff Beaven contends that he presented evidence showing he belonged to a protected class; had performed his job satisfactorily until his firing, and was dismissed from his job. Plaintiff contends that he also submitted evidence that similarly situated white program advisers who committed the same infractions had been given warnings or received hearings and were not fired. In our view, if plaintiff presented this evidence of disparate treatment, it is sufficient to give rise to an inference of discrimination and constitutes a prima facie case of discriminatory discharge. See e.g. Reynolds v. Humko Products, 756 F.2d 469, 472 (6th Cir.1985); Rasimas v. Michigan Dept. of Mental Health, 714 F.2d 614, 623 (6th Cir.1983).
 
 
 13
 In sum, the district court erred in granting summary judgment on the ground that plaintiff failed to show the defendants sought to fill his vacated position after he was fired. Accordingly, the case is reversed and remanded for further proceedings consistent with this opinion.