798 F.2d 469
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Howard GORDON, Plaintiff-Appellant,
v.
UNITED STATES OF AMERICA, DEPARTMENT OF the NAVY, Defendant-Appellee.
 No. 85-5314.
 United States Court of Appeals, Sixth Circuit.
 June 10, 1986.
 
 Before CONTIE and RYAN, Circuit Judges, and BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff-appellant Howard Gordon appeals from the district court's grant of summary judgment in favor of the defendant-appellee United States Department of the Navy (Navy) in this racial discrimination suit.
 
 I.
 
 2
 Howard Gordon was employed as a machinist at the Naval Ordnance Center in Louisville, Kentucky. On June 8, 1975, Gordon was selected to temporarily fill the position of machinist-foreman, Grade WS-10. This was a temporary promotion for the summer months while other foremen were on vacation. Due to extensions, Gordon continued as a temporary machinist-foreman until March 1976.
 
 
 3
 In April 1976, Gordon was again promoted to a temporary machinist-foreman position while another foreman was on sick leave. Due to additional extensions, he continued in this position for one year,
 
 
 4
 There was a reduction in the work-force in the center where Gordon was employed during the months that he acted as foreman. When a machinist-foreman position became vacant, Gordon was not permanently promoted to that position. Gordon alleges that it was the Navy's policy to fill such vacancies with the individual who was temporarily filling the position.
 
 
 5
 Subsequently, the Naval Ordnance cancelled the merit promotion plan which ranked Gordon as highly qualified for the position of foreman. The new plan made a distinction between selection criteria for permanent promotions as opposed to temporary promotions. As a result of cancelling the old register, Gordon's opportunity to be permanently promoted to machinist-foreman was eliminated.
 
 
 6
 Gordon believed that he was not permanently promoted to the vacant foreman position because he was black. He filed a formal complaint alleging racial discrimination with the Office of Civilian Personnel, Southern Field Division. Upon a finding of no discrimination, a hearing was held before the United States Civil Service Commission's Federal Employee Appeals Authority on November 2, 1977. The complaint examiner recommended a finding of no discrimination, and the Secretary of the Navy (Secretary) adopted the examiner's findings and recommendation, resulting in a final decision on April 11, 1978.
 
 
 7
 Gordon then sought review by the Equal Employment Opportunity Commission (EEOC). The EEOC initially reversed the Secretary's decision on January 22, 1981. However, upon the Navy's motion for reconsideration, the EEOC concluded on july 8, 1982 that Gordon had failed to establish a prima facie case of racial discrimination.
 
 
 8
 The immediate action was filed on August 24, 1982 with the United States District Court for the Western District of Kentucky pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.c. Secs. 2000e, et seq. and 42 U.S.C. Secs. 1981 and 1983. In his complaint, plaintiff Gordon alleged that he wrongfully had been denied permanent promotion to the foreman position because of his race and that the Navy had policies and customs which discriminated against blacks. Specifically, Gordon claimed that there were twenty WS-10 foremen at the Louisville Naval Ordnance, none of whom were black. The plaintiff did not allege, however, that the Navy had filled the vacant position for which he had applied, or that the Navy had continued to seek applicants for that position.
 
 
 9
 The plaintiff attempted to commence discovery, but the district court granted the Navy's motion to stay discovery until the court had ruled on the Navy's motion for summary judgment. The court thereafter granted the Navy's motion for summary judgment, concluding that the plaintiff had failed to make out a prima facie case of racial discrimination under the test set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). The district court stated that the plaintiff had failed to prove "that the position remained open after the failure to promote plaintiff. In fact, the position did not remain open and no candidates were sought for the position." The district court then held that although a Title VII plaintiff was entitled to a de novo hearing, a review of the agency records in this case revealed that there was no genuine issue of material fact. The court thereby granted the defendant's summary judgment motion, relying on Sperling v. United States, 515 F,2d 465, 484 (3d Cir. 1975), cert. denied, 426 U.S. 919 (1976). Gordon filed a timely notice of appeal to this court.
 
 II.
 A.
 
 10
 Fed. R. Civ. P. 56(c) provides that summary judgment shall be rendered for the movant,
 
 
 11
 if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.
 
 
 12
 The district court may not grant summary judgment if there are material facts in dispute, Watkins v. Northwestern Ohio Tractor Pullers Ass'n, Inc., 630 F.2d 1155, 1158 (6th Cir. 1980), and it is the movant's burden to establish that no genuine issue of fact exists. The evidence, and inferences therefrom, is to be viewed in the light most favorable to the opposing party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). "The movant's papers are to be closely scrutinized while those of the opponent are to be viewed indulgently." Watkins, 630 F.2d at 1158. Although the movant is entitled to judgment as a matter of law if no genuine issue of fact exists, Bouldis v. U.S. Suzuki Motor Corp., 711 F.2d 1319, 1324 (6th Cir. 1983), summary judgment may be particularly inappropriate where motive and intent are at issue. Cedillo v. International Ass'n of Bridge & Structural Iron Workers, 603 F.2d 7, 11 (7th Cir. 1979); Empire Electronics Co. v. United States, 311 F.2d 175, 180 (2d Cir, 1962); Cross v. united States, 336 F.2d 431, 433 (2d Cir. 1964), United Industrial Corp. v. Nuclear Corp. of America, 43 F.R.D. 30, 31 (S.D. N.Y. 1967). See also Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 473 (1962) (summary judgment may be inappropriate in antitrust action where motive and intent are at issue); Smith v. Northern Michigan Hospitals, Inc., 703 F.2d 942, 947 (6th Cir. 1983) (same); S. J. Groves & Sons Co. v. Ohio Turnpike Commission, 315 F.2d 235, 237 (6th Cir.), cert. denied, 375 U.S. 824 (1963) (even if basic facts not in dispute, parties may disagree with respect to the proper inferences to be drawn therefrom); Hart v. Johnson, 389 F.2d 239 (6th Cir. 1968) (per curiam) (same). Summary judgment is premature if there is evidence tending to support a claim; "all that is required is that sufficient evidence supporting the claimed factual dispute be shown ...." First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 288-89 (1968). However, if "no evidence has been presented indicating that a discriminatory purpose was a motivating factor," summary judgment may be appropriate. Kendall v. Hoover Co. , 751 F.2d 171, 173 (6th Cir. 1984) (quoting 10A C. Wright, A. Miller & M. Kane, Federal Practice & Procedure Sec. 2732.2 at 340 (2d ed. 1983) ).
 
 
 13
 In McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), the Supreme Court set forth the proper procedure and burdens of proof in a racial discrimination disparate treatment suit.[1] The Court specified that the initial burden rests with the complainant who must establish a prima facie case of racial discrimination.
 
 
 14
 This may be done by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.
 
 
 15
 Id. at 802 (footnote omitted). The Court observed, however, that these factors may not apply in every situation. Id. at n.13. In fact, the four criteria in McDonnell Douglas for establishing a prima facie case were never intended to be inflexibly applied.
 
 
 16
 The method suggested in McDonnell Douglas for pursuing this inquiry, however, was never intended to be rigid, mechanized, or ritualistic. Rather, it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination. A prima facie case under McDonnell Douglas raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors. See Teamsters v. United States, 1431 U.S. 324,] 358 n.44. And we are willing to presume this largely because we know from our experience that more often than not people do not act in a totally arbitrary manner, without any underlying reasons, especially in a business setting.
 
 
 17
 Furnco Construction Corp. v. Waters, 438 U.S. 567, 577 (1978). Thus, the burden which the plaintiff must meet to establish a prima facie case is to set forth employer actions "from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were 'based on a discriminatory criterion illegal under the Act.' " Id. at 576 (quoting Teamsters v. United States, 431 U.S. 324, 358 (1977) ). See also Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981); Jasany v. United States Postal Service, 755 F.2d 1244, 1249-50 n.5 (6th Cir. 1985); Jackson v. RKO Bottlers of Toledo, Inc., 743 F.2d 370, 374 (6th Cir. 1984).
 
 
 18
 The establishment of a prima facie case "creates a rebuttable 'presumption that the employer unlawfully discriminated against' him." United States Postal Service Board of Governors v. Aikens, 460 U.S. 711, 714 (1983) (quoting Burdine, 450 U.S. at 254). If a prima facie case is established, the defendant may attempt to rebut the presumption by providing a legitimate, nondiscriminatory reason for its decision not to hire or promote the employee, McDonnell Douglas, 411 U.S. at 802, and the plaintiff must then have an opportunity to show that the stated reasons are merely pretext for discriminatory treatment. Id. at 804. The primary factual issue is " '[whether] the defendant intentionally discriminated against the plaintiff," ' Aikens, 460 U.S. at 715 (quoting Burdine, 450 U.S. at 253), and "whether the employer treats people less favorably than others because of race, color, religion, sex or national origin." Beaven v. Commonwealth of Kentucky, 783 F.2d 672, 675 (6th Cir. 1986).
 
 
 19
 In Beaven, this court held that it was error to grant summary judgment on the basis that the plaintiff had failed to make out a prima facie case when he did not establish that the employer had continued to seek applications for the position he was fired from. The court stated:
 
 
 20
 moreover, in our view, requiring a plaintiff to establish a McDonnell Douglas criterion which has no bearing upon the question of disparate treatment or upon the defendant's motive for dismissing plaintiff is precisely the kind of mechanistic application of the McDonnell Douglas model proscribed by the Supreme Court.
 
 
 21
 Beaven, 783 F.2d at 676. In that case, the complainant had established that he was black, had satisfactorily performed his job and was fired from his job. He also alleged that white employees had not been fired for participating in the same activities for which the plaintiff had been fired. The court held that this was sufficient to establish a prima facie case; that it was "sufficient to give rise to an inference of discrimination ...." Id.
 
 
 22
 In the instant case, the plaintiff established that he was black, was qualified for the position of machinist-foreman but was denied promotion when a vacancy occurred. He alleges that on previous occasions white individuals in similar positions had been permanently promoted when vacancies occurred, and that none of the permanent foremen positions are held by blacks. Under Beaven, we believe Gordon has met his burden of establishing a prima facie case. Were we to hold otherwise, a discrimination claim could be frustrated simply by eliminating the particular job sought. The fact that the Navy may not have filled the position for "legitimate" reasons should be considered for the purpose of determining whether the Navy successfully rebutted the complainant's prima facie case, not for determining whether a prima facie case has been established. The plaintiff must then have an opportunity to show that the Navy's articulated reasons are merely a pretext for perpetrating the Navy's pattern of refusing to promote blacks to foremen positions. See Aikens, 460 U.S. at 716 n.5.
 
 B.
 
 23
 Not only did the district court err in concluding that the plaintiff failed to meet his initial burden of going forward, but this error was exacerbated by relying solely on the administrative record and denying Gordon the opportunity to proceed with discovery.
 
 
 24
 In Chandler v. Roudebush, 425 U.S. 840 (1976), the Supreme Court held that federal employees, pursuant to 42 U.S.C. Sec. 20OOe 16(c), have the same right to a de novo hearing as a private plaintiff. The Court reasoned that when Congress was faced with "a choice between record review of agency action based on traditional appellate standards and trial de novo of Title VIIclaims,"id. at 861, Congress decided that both private and federal employees were entitled to trial de novo.
 
 
 25
 In the instant case, the district court acknowledged the plaintiff's right to trial de novo under Chandler v. Roudebush, but reasoned that,
 
 
 26
 a review of the agency record in this case, considered by the standard applicable to Fed. R. Civ. P. 56, demonstrates that there is no genuine issue of material fact as to whether plaintiff was discriminated against in violation of Title VII.
 
 
 27
 The district court thereby granted summary judgment for the defendant relying on Sperling v. United States, 515 F.2d 465 (3d Cir. 1975), cert. denied, 426 U.S. 919 (1976).
 
 
 28
 In Sperling, a case decided prior to Chandler v. Roudebush, the Third Circuit held that even though federal employees had a right to a de novo hearing, summary judgment may nonetheless be appropriate. The court went on to hold that:
 
 
 29
 [I]n the de novo proceedings in the district court, the agency record can be reviewed on a motion for summary judgment by the standard generally applicable under Rule 56, Fed. R. Civ. P.; that is the existence of any genuine issue of fact as to employment discrimination. If such a motion is not granted, the agency record is admissible in evidence at trial when appropriate under the applicable Federal Rules of Civil Procedure and of Evidence.
 
 
 30
 515 F.2d at 484. The Third Circuit did not hold, however, that the district court could rely solely on the administrative record in granting a summary judgment motion.[2] To rely solely on the administrative record, versus reviewing the administrative record along with other evidence, contravenes the holding in Chandler that a federal employee is entitled to a trial de novo. Cf. Jones v. United States Postal Service, 78 F.R.D. 196, 200 (E.D. Mich. 1978) (in light of administrative record, pretrial discovery and in-court hearing, summary judgment is appropriate. court relied on Sperling)" 39
 
 
 31
 Further, although it is generally within the trial judge's discretion to define the appropriate scope of discovery, Chemical & Industrial Corp. v. Druffel, 301 F.2d 126 (6th Cir. 1962) (not an abuse of discretion to permit depositions and interrogatories which compelled testimony damaging to the defendants, even though broad in scope), "it is not appropriate to impose limits on discovery," except for the usual limits of "relevancy and burdensomeness" in federal employee discrimination cases. Blondo v. Bailar, 548 F.2d 301, 304 (10th Cir. 1977). Further,
 
 
 32
 [s]ince summary judgment is a "drastic device," ... it should not be granted when there are major factual contentions in dispute.... This is particularly so when, as here, one party has yet to exercise its opportunities for pretrial discovery.
 
 
 33
 National Life Insurance Co. v. Solomon, 529 F.2d 59, 61 (2d Cir. 1975) (per curiam) (emphasis added). It can constitute reversible error to grant summary judgment before the plaintiff "has been given a reasonable opportunity to complete the discovery it seeks." Penn Galvanizing Co. v. Lukens Steel Co., 59 F.R.D. 74, 80 (E.D. Pa. 1973). See also Kinee v. Abraham Lincoln Federal Savings & Loan Ass'n, 365 F. Supp. 975, 981 (E.D. Pa. 1973) (court would not have granted summary judgment because, party had no opportunity for discovery due to a stay order; "To grant a motion for summary judgment under such circumstances would be patently unfair."). In this case, staying discovery and relying solely on the administrative record was clearly prejudicial and compounded the McDonnell Douglas error.
 
 
 34
 For the above-stated reasons, this case is REVERSED and REMANDED for further proceedings consistent with this opinion.
 
 
 
 [1]
 "Disparate treatment" means that an employer has treated "some people less favorably than others because of their race, color, religion, sex, or national origin." International Brotherhood of Teamsters v. United States, 431 U.S. 324, 335 n.15 (1977). This is different than a "disparate impact" suit, where a test, device or rule which is neutral on its face has a more adverse effect on one group
 
 
 [2]
 In Sperling, both the plaintiff and defendant argued that the administrative record revealed that no issues of material fact existed. The Third circuit disagreed. See also Toney v. Bergland, 645 F.2d 1063 (D.C. Cir. 1981) (per curiam) (court found material facts at issue even though parties stipulated to administrative record)
 
 
 [3]
 Further, the district court's holding that no genuine issue of material fact existed was tainted by the court's belief that the plaintiff had failed to make out a prima facie case. Once it is recognized that the plaintiff did meet this initial burden, then a material issue of fact remains: whether the Navy's stated reasons for not promoting Gordon were merely a pretext for discriminating on the basis of race